

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., | ) | |
| | ) | |
| Appellant, | ) | WD77226 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | November 12, 2014 |
| JUVENILE OFFICER, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Daniel F. Kellogg, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

A.B. appeals the judgment of the Circuit Court of Buchanan County, Missouri, Juvenile Division, sustaining the allegations against him that he committed the delinquent act of sexual molestation in the first degree pursuant to 566.067.1.[1] A.B. argues on appeal that the trial court erred in finding sufficient evidence to establish beyond a reasonable doubt that he had the requisite mental state (i.e. that the actions were taken "for the purpose of arousing or gratifying sexual desire of any person"). For the reasons set forth below, the judgment is reversed.

---

[1]All statutory references are to RSMo 2000 cumulative as currently supplemented unless otherwise indicated.

# FACTS AND PROCEDURAL HISTORY[2]

D.H.,[3] a five-year-old boy, was found by his father on a trampoline with another five-year-old boy with both of their pants down and touching each other's genitals.[4] D.H.'s father testified that when he asked D.H. where he had learned this behavior, D.H. told him that he learned it from A.B. A.B. was the son of family friends who was twelve-years old and had been to the home of D.H. on multiple occasions. Based on this report and further investigation, A.B. was alleged by the Juvenile Officer ("J.O.") to have committed the delinquent act of sexual molestation in the first degree under section 566.067.1 against D.H.

Testimony adduced at a bench trial established that incidents between A.B. and D.H. occurred on two or three occasions in the summer of 2013. The evidence was inconsistent as to exactly what happened. At various times each of the children stated that each touched the other's genitals and at other times each of the children stated that they each put the other's genitals in their mouths. The incidents occurred in a bedroom and there were parents and other children present in the house. There was no evidence that either child achieved an erection or ejaculation as a result of any of the incidents. Both children were consistent throughout that each incident was very brief, lasting only a few seconds. D.H. testified that A.B. told him not to tell anyone about what happened.

---

[2]We review the facts in the light most favorable to the trial court's judgment. *In re B.J.H., Jr.*, 356 S.W.3d 816, 820, n.1 (Mo. App. W.D. 2012) (citation omitted).

[3]Pursuant to section 566.226, we refer to all potential abuse victims and their family members using their initials so as to protect the identities of the victims.

[4]The other child was not interviewed by the police and is not involved in the case. Efforts by A.B. to obtain his testimony were denied by the trial court on relevancy grounds.

D.H. was unable to describe at trial what had happened until after taking a short break to confer with counsel. In his very brief testimony, D.H. told the court "he sucked my penis and he kissed my butt cheek and we did it to each other." D.H. stated it happened two times. D.H.'s father ("J.H.") described seeing his son on the trampoline with another five-year-old boy with their pants down. J.H. asked D.H. where he had learned that "crap." D.H. told him that A.B. taught him.

Detective Mike Wilkerson ("Det. Wilkerson"), a detective with the Buchanan County Sheriff's Department, took a statement from A.B. in the presence of A.B.'s parents and Juvenile Officer Peau ("Officer Peau").[5] Detective Trenny Wilson ("Det. Wilson"), a St. Joseph police officer, conducted forensic interviews with both D.H. and A.B. Det. Wilson conducted the interviews as part of her second job interviewing children on behalf of the Buchanan County Sheriff's Department. The information provided in these statements was consistent with the evidence set forth above.

At the close of the State's evidence, A.B. moved for a finding that the State did not meet its burden in proving all three elements of the crime pursuant to section 566.067.1 in that the State presented no evidence that the acts were done for the purpose of sexual arousal or gratification. The court denied the motion, stating: "Well, I think the only inference could be if a 13-year-old [sic] is touching a five-year-old's penis, I don't know what the other inference would be." A.B. then presented evidence.[6]

---

[5]Wilkerson admitted that although it was customary to videotape interviews and that the equipment was in the room, he did not videotape the interview with A.B.

[6]By introducing evidence, A.B. waived any error in the denial of his motion at the close of the Juvenile Officer's case. *State v. Anderson,* 348 S.W.3d 840, 843 (Mo. App. W.D. 2011) (citation omitted).

3

Dr. Gregory Sisk ("Dr. Sisk"), a clinical psychologist who has maintained a contract with the Missouri Children's Division for over thirty years testified for A.B. Dr. Sisk has conducted thousands of child interviews over the years, with forty-five percent of those involving allegations of sexual abuse. Dr. Sisk conducted an evaluation of A.B. which included a "typical battery" of tests such as a measurement of intelligence and academic function, personality tests, tests on family life and a juvenile sex offender risk assessment test. Dr. Sisk stated that he deemed the tests reliable based on a lack of "patterns that might reveal tendencies to distort information."

A.B. told Dr. Sisk that he was at D.H.'s house and they were playing. Dr. Sisk stated that "he confirmed to me that he gave D.H. the idea that they should explore each other's genitals." "He touched D.H.'s genitals. D.H. touched his. They had their clothes on . . . It lasted only a few seconds. Also he put his mouth on D.H.'s penis and D.H. put his mouth on A.B.'s penis." "There was no erection, there was no arousal, there was no ejaculation," just touching.

Dr. Sisk testified that on a scale of zero to thirty, A.B. scored a two on the juvenile sex offender risk assessment test, which is classified as "low risk." He received one point for having had two incidents within six months of each other and one point for having had "one incident of prior sexual abuse as a victim."

The testing showed A.B. to be immature and have less understanding of sexual issues than an average twelve or thirteen-year-old. Dr. Sisk viewed the events between D.H. and A.B. as follows: "We have nothing from either D.H. or A.B. that describes, you know, arousal, erection or any normal sort of ordinary sexual act or gratification. It's just

4

exploring." Dr. Sisk found no evidence of "any sort of sexual deviation or preoccupation or anything that would explain that he'd be doing it for arousal or gratification." Dr. Sisk recommended that continued individual and family counseling would be adequate to provide A.B. with sex education and the family with improved communication skills. Dr. Sisk strongly opposed any sort of "sex offender treatment" as that would be a "misfire" and not at all appropriate or helpful to A.B. given his lack of sexual thoughts, feelings and triggers. "I don't think he has that." A.B. needs exactly what he is already getting; that is, counseling with a therapist. Dr. Sisk opined that A.B. did not exhibit any grooming or predatory behavior. A.B. knew that his behavior with D.H. was of a wrong nature, as opposed to a sexual one.

Ada Silvey ("Silvey") is a licensed clinical social worker who has over forty years of experience. Silvey first met A.B. the day after his interviews with Det. Wilson and Det. Wilkerson. Silvey later obtained Det. Wilson's videotaped interviews of D.H. and A.B. as well as all of the reports prepared regarding the incidents. After reviewing everything, Silvey developed a treatment plan to teach A.B. basic sexuality because when she started talking about it with him, she "realized that he knew very little of anything." For example, A.B. did not know what the words erection, ejaculation, oral sex or masturbation meant and did not understand basic birth facts. Silvey is currently using a book designed for ages five to eight with A.B. because that is "where he is" with regard to his sexual knowledge. Silvey has never met a more "ill-informed and undeveloped" thirteen-year-old as A.B. She does not believe that he is faking. Silvey sees A.B. once or twice per week. Based on her education, training and experience, it is Silvey's opinion

5

that A.B. was just exploring. It is her opinion that the touching that occurred with D.H. was not sexual in nature.

As rebuttal, the J.O. presented the testimony of Joyce Estes ("Estes"), who is a licensed clinical social worker. Estes had never met or interviewed A.B. or D.H. As such she could opine only generally on normal sexual development in children in the general population. Estes offered no specific opinions regarding A.B., including no opinion whatsoever whether he had the intent to sexually gratify himself or even the knowledge or capacity for sexual gratification. Nonetheless, Estes opined that in general "mouth-to-penis contact" was an "advanced stage of sexual whatever." When asked "when a person engages in oral sex,[7] is that generally to satisfy desire, arousal and gratification?" she replied "That would definitely be the only reason I could think that they would do it. . . ." She further opined that with an age difference of more than four years between the children, it is no longer sexual exploration but is an abusive act because "the younger child doesn't have the power to stop it, doesn't even know that they could stop it probably, wouldn't have the strength."

Following trial, the court found "beyond a reasonable doubt that the facts contained in the petition are true." The court found A.B. to be within the jurisdiction of the juvenile court and ordered that he be placed on probation, register with the juvenile officer as a juvenile sex offender pursuant to section 211.425, be given a sex offender

---

[7]We note that the term "oral sex" is a mischaracterization of the evidence which was that the behavior consisted of contact lasting only a few seconds with no evidence of erection.

psychological evaluation, and have no unsupervised contact with children under the age of seven. A.B. timely appeals. Further facts will be set forth below as necessary.

## ANALYSIS

In his sole point, A.B. argues that there was insufficient evidence to find that he committed the delinquent act of sexual molestation beyond a reasonable doubt because there was no evidence from which the trial court could find that he had the requisite intent needed to establish the offense (i.e. that the actions were taken "for the purpose of arousing or gratifying sexual desire of any person").[8] A.B. contends that it was error for the trial court to infer intent where J.O. presented no evidence as to A.B.'s intent.

### Standard of Review

We review juvenile proceedings under the same standard as any other court-tried case. *C.L.B. v. Juvenile Officer,* 22 S.W.3d 233, 235–36 (Mo. App. W.D. 2000). We will not disturb the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "[I]n determining the sufficiency of the evidence, we view the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and we ignore all evidence and inferences to the contrary." *In re J.A.H.*, 293 S.W.3d 116, 119 (Mo. App. E.D. 2009) (citing *C.L.B.,* 22 S.W.3d at 236). "While we are to accept as true all inferences favorable to the State, they must be logical inferences that may be *reasonably* drawn from the evidence." *J.N.C.B. v. Juvenile Officer*, 403 S.W.3d 120, 124 (Mo. App. W.D.

___

[8]Section 566.010(3).

7

2013) (citation omitted).  The "integrity of the inference" must be established before it can sufficiently support a judgment that the act was committed.  *Id.* at 128.

## Discussion

A.B. was alleged to have committed the delinquent act of child molestation in the first degree, a violation of section 566.067, which states:

> 1. A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact.

"Sexual contact" is defined in section 566.010:

> (3) "Sexual contact", any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]  (emphases added).

In order to find that a juvenile committed this act, the trial court had to have found each element of the offense beyond a reasonable doubt.  *C.L.B.*, 22 S.W.3d at 239 (Mo. App. W.D. 2000).  It is the J.O. who has the burden of proof as to every element.  *J.A.H.*, 293 S.W.3d at 120 (citing *In the Interest of V.L.P.,* 947 S.W.2d 546, 547 (Mo. App. W.D. 1997)).  "Intent to cause sexual arousal or gratification is a specific element of the crime charged."  *Id.* (citing § 566.010(1)).  Indeed, the "gravamen of the offense [is] the touching of the genitals for the purpose of sexual arousal."  *State v. Kelso*, 391 S.W.3d 515, 520 (Mo. App. W.D. 2013) (citing *State v. Potter*, 747 S.W.2d 300, 306 (Mo. App. S.D. 1988)).  "[T]he crime can only be committed in one way: touching with the purpose to arouse or gratify sexual desire."  *Id.* (citing *State v. Patton*, 229 S.W.3d 631, 637 (Mo. App. S.D. 2007)).  "Thus, there must be some evidence from which the juvenile court

8

could find *beyond a reasonable doubt* that Juvenile intended to do the act for the purposes of sexual arousal or gratification." *J.A.H.*, 293 S.W.3d at 120 (emphasis added). "Without such evidence, we must find that Juvenile Officer failed to meet its burden of proof on this element." *Id.*

An actor's mental state will often rest on circumstantial evidence and permissible inferences. *J.A.H.*, 293 S.W.3d at 120 (citing *State v. Morton,* 229 S.W.3d 626, 630 (Mo. App. S.D. 2007)). The determination of whether a touching is for the purpose of arousing or gratifying sexual desire is dependent upon the circumstances of the particular case. *Id.* (citing *State v. Willis,* 239 S.W.3d 198, 201 (Mo. App. S.D. 2007)). Here, there is no dispute that the touching occurred. Both boys admitted that they pulled their pants down, then touched and put their mouths on each other's genitals. Both agreed that each incident lasted only a few seconds and A.B. stated they "just stopped because they got bored or whatever."

It is undisputed that there was no direct evidence of physical arousal. Both Det. Wilson and Det. Wilkerson testified that there was no evidence of an erection, ejaculation or any kind of up and down movement described. The incidents each lasted only a few seconds and neither boy described them in sexual terms. Absent direct evidence of intent, circumstantial evidence of intent is to be found in the specific circumstances of each case. *Willis,* 239 S.W.3d at 201. Thus, the J.O. needed to prove by circumstantial evidence that A.B. acted with the purpose of arousing or gratifying sexual desire beyond a reasonable doubt. § 566.010.

The J.O. presented no circumstantial evidence that A.B. acted for the purpose of sexual gratification, or that he had even reached puberty. No witness provided testimony concerning A.B.'s mental state or evidence of sexual intent such as physical arousal, words spoken that would indicate sexual desire, additional actions such as rubbing, moving a hand up and down, or use of a lubricant. Despite this, when A.B. moved for judgment of dismissal at the close of the J.O.'s evidence, the trial court denied the motion, stating: "Well, I think the only inference could be if a 13-year-old [sic] is touching a five-year-old's penis, I don't know what the other inference would be." Thus, the issue becomes whether an inference based solely on the act's occurrence has sufficient "integrity" to establish beyond a reasonable doubt that A.B. acted for the purpose of satisfying sexual desire. *J.N.C.B.*, 403 S.W.3d at 128.

In *J.A.H.*, the evidence before the court was that on one occasion, a minor boy age eight or nine took a shower with a boy age five or six and scrubbed the younger boy's penis with a sponge. 293 S.W.3d at 118. A second occasion involved the older boy getting on top of the younger boy in a bunk bed and either touching his penis to the younger boy's mouth or putting it into his mouth for an instant. *Id.* at 118-19. The older boy told the younger one not to tell or he would get hurt. *Id.* at 118. "Although it is clear that the court believed T.H.'s testimony that Juvenile rubbed T.H.'s penis with a sponge in the shower, and on another occasion, touched his penis to T.H.'s mouth, the judgment makes no specific finding that Juvenile committed these acts for the purpose of sexual arousal or gratification." *Id.* at 119. "We recognize that direct evidence of an illicit act may give rise to the inference of the necessary *mens rea* in certain juvenile cases." *Id.* at

10

120, n.7. "However, we find that the limited evidence and the circumstances of this case (including the ages of Juvenile and T.H.) fail to support such an inference here." *Id.* The court further stated:

> We find that the evidence fails to support a finding that Juvenile touched his genitals to T.H.'s mouth *for the purpose of sexual arousal or gratification.* There is no evidence that Juvenile used the game of doctor for his or T.H.'s sexual arousal or gratification. For example, there was no evidence that Juvenile's penis was erect. There was no evidence that Juvenile's penis was in T.H.'s mouth for any significant duration of time. There was no evidence of a sexual statement made by Juvenile to T.H. Juvenile Officer argues that Juvenile's threat to hurt T.H. if he told anyone is sufficient evidence of the requisite intent; however, we disagree. Statutory sodomy in the first degree requires more than knowledge that the act is wrong; the statutes require proof that the act was done with the intent to cause sexual arousal or gratification. Sections 566.062.1 and 566.010(1). Thus, while Juvenile's threat may show that he knew what he was doing was wrong, this is not the *mens rea* required under the statutes.

*Id.* at 121.

The court was thus "not persuaded by Juvenile Officer's argument that *intent is inferred from the act alone*." *Id.* at 122. (emphasis added). It concluded with the following:

> We recognize that, in certain circumstances, [other cases holding] that an **adult's actions toward a child** were done for 'no other discernible reason' but for the purpose of sexual arousal or gratification, may be applicable in the juvenile context. We find it difficult, however, to apply [that holding] in this case, where Juvenile was eight or nine and T.H. was five, six or seven, **and there was no evidence regarding the Juvenile's behavioral development or knowledge of sexual subject matter.** Without such evidence or more detailed information regarding the circumstances of the touchings, we are unwilling to find that an eight or nine year old touches his penis to the mouth of a five or six year old for no discernible reason other than sexual arousal or gratification.

*Id.* (emphases added).

We are also not persuaded that *intent can be inferred from the act alone*. Although at oral argument the J.O. posited that the act itself was sufficient proof of A.B.'s intent to sexually gratify, we note that the legislature drew a distinction between committing a physical act and having the intent to do so for sexual gratification. § 566.010. Had it considered the *mens rea* to automatically accompany the act, it would not have specifically identified them as two separate elements in its definition of "sexual contact."

The evidence in this case does not demonstrate a sexual intent by A.B. A.B.'s therapist testified that although A.B.'s I.Q. test revealed that he was slightly above average intelligence, A.B.'s knowledge of sexuality was that of a seven or eight-year-old developmentally. Silvey further testified that A.B.'s level of knowledge was far below that of a "normal" twelve or thirteen-year-old. Dr. Sisk, an expert psychologist, performed a comprehensive evaluation of A.B. and concluded that A.B. had no concept of what sexual contact was at the time the incidents occurred. Dr. Sisk opined that the specifics of the incidents indicate that they were of an exploratory nature and not of a sexual nature. A.B.'s parents testified that A.B. had no sex education whatsoever in that he had no formal sex education classes at his private school, nor had the parents given him any information whatsoever about his sexuality.

After A.B.'s motion to dismiss at the close of the J.O.'s case was denied and the court indicated that it was operating under an inference of intent for sexual gratification based on the age difference between D.H. and A.B., A.B. presented two experts who each testified that A.B. was not acting for the purpose of sexual gratification due to A.B.'s

12

sexual immaturity level, as discussed *supra*. After A.B.'s experts testified, J.O. presented one expert in rebuttal who had not evaluated or even met A.B. Estes testified that, in general, an age gap signifies that the older child had a sexual intent and used a power imbalance to force the younger child to do the acts. As explained above, this generalization is not evidenced in the facts at hand and does nothing to refute the expert opinions that are specific to this juvenile, A.B.

Therefore, because there was no evidence that A.B. acted for the purpose of sexual arousal or gratification, the J.O. failed to meet its burden of proving all elements of the offense. Accordingly, we find that the trial court's judgment was erroneous and that the J.O. failed to prove each element of child molestation in the first degree beyond a reasonable doubt.

For all of the above reasons, Point I is granted.

## CONCLUSION

The judgment of the juvenile court is reversed and A.B. is ordered discharged from the effects of that disposition.

_____
Gary D. Witt, Judge

All concur

13