Thomas H. Newton, Presiding Judge *651 Mr. Ronnie Davis appeals a Buchanan County Circuit Court conviction by a jury for two counts of the class A misdemeanor of sexual abuse in the second degree. Mr. Davis was sentenced to consecutive terms of one year in jail for each count. We affirm.
Factual and Procedural Background
In June 2014, Mr. Davis was looking after his granddaughters, ten-year-old M.D., and nine-year-old E.D., while Grandmother was at work. Mr. Davis asked M.D. to try on her swimsuit and when she needed help fastening it, Mr. Davis "went under [her] swimsuit and touched [her] boob."
Not long after this incident, Mr. Davis called M.D. into his bedroom, and he touched her under her shirt on her boob and made skin-to-skin contact. E.D. entered the room, witnessed the occurrence, and the girls told Mr. Davis they were going to tell Grandmother. Mr. Davis responded by saying he was "going to beat [M.D.'s] butt."
M.D. and E.D. went to Grandmother's room to watch television. Mr. Davis came into the room and began wrestling around with both girls on the bed. As he was doing so, he bit M.D.'s boob, and touched her "bad spot" between her legs. Around this same time, Mr. Davis asked M.D. to go get him a Dr. Pepper. When M.D. returned she saw Mr. Davis touching E.D. underneath her skirt, where she "goes potty." Both girls again told Mr. Davis that they were going to tell their Grandmother because what he had done was bad.
When Grandmother returned home from work, M.D. and E.D. asked her to go on a walk with them. While the three were walking, M.D. and E.D. told their Grandmother what had happened. When the three returned home, Grandmother confronted Mr. Davis about what the girls had told her. Mr. Davis said he had been wrestling with the girls and had tickled them, but that he had not touched them sexually. Grandmother called the girls' mother who said she did not think anything had happened. Grandmother then called the police.
Officers arrived at the house around 7:46 p.m., and Grandmother told them what M.D. had told her about Mr. Davis biting her breast and touching her vagina. Officers spoke with M.D. who told them that Mr. Davis had asked her to try on her swimsuit, that he had wrestled with her on the bed and touched her inappropriately. M.D. told officers that he had touched her on her right breast and had tickled her vaginal area. E.D. also spoke with the officers and told them that Mr. Davis had touched her "bad spots" and gestured toward her vagina. E.D. also told officers that Mr. Davis had threatened to whip them if they said anything to Grandmother.
The officers spoke with Mr. Davis who told them that he had been wrestling with the girls and that after a while he told them to settle down and when they did not comply he told them he would whip them if they did not do so. M.D.'s shirt was sent to a lab for testing along with a DNA swab provided by Mr. Davis. The sample collected from the right breast of the shirt contained a mixture of DNA from at least three different people, so no comparisons with known DNA samples were attempted.
On July 3, 2014, M.D. and E.D. met with Trenny Wilson who conducted individual forensic interviews with the girls. On July 10, 2014, the police spoke with Grandmother, and she provided a written statement *652 about what had occurred. The State charged Mr. Davis with two counts of first-degree child molestation and the case went to trial on September 22, 2015. The trial court declared a mistrial after a witness for the State offered inadmissible testimony.
The second trial was held on March 8, 2016. At trial, Mr. Davis denied touching the girls' breasts or vaginal areas. He testified that he may have "bumped [those areas] or something" while they were wrestling.
For each count, the jury was instructed on the lesser offense of second-degree child molestation as well as sexual abuse in the second degree. The jury found Mr. Davis guilty on both counts of the lesser included offense of second-degree sexual abuse. The trial court sentenced Mr. Davis to one year in jail for each count to run consecutively. This appeal followed.
Legal Analysis
In points one and two, Mr. Davis claims that the trial court erred in overruling his motions for judgment of acquittal and rendering sentence and finding that there was a reasonable inference that Mr. Davis perpetrated body-to-breast contact against M.D., and hand-to-genital contact against E.D. for the purpose of arousing or gratifying sexual desire.
Mr. Davis filed motions for judgment of acquittal at the close of the State's evidence and at the close of all evidence; the trial court denied both motions. Mr. Davis brought this same allegation of error in his motion for a new trial. Mr. Davis properly preserved this issue for appeal.
When reviewing a challenge to the sufficiency of the evidence, this Court will accept "as true all evidence and its reasonable inferences in a light most favorable to the verdict and reject[ ] all contrary evidence and inferences." State v. Botts , 151 S.W.3d 372, 375 (Mo. App. W.D. 2004). We must determine "whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt, not whether the verdict was against the weight of the evidence." Id. This Court will not, however, "supply missing evidence, or give the State the benefit of unreasonable, speculative or forced inferences." State v. Whalen , 49 S.W.3d 181, 184 (Mo. banc 2001) (citation omitted). The relevant question here is "whether, after viewing the evidence in a light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Bateman , 318 S.W.3d 681, 687 (Mo. banc 2010) (citation omitted).
Mr. Davis was convicted of two counts of second-degree sexual abuse. Under section 566.101, a person commits the offense "if he or she purposely subjects another person to sexual contact without that person's consent." Sexual contact is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" § 566.010(3).[1] Mr. Davis challenges the sufficiency of the State's evidence and claims the evidence presented at trial was insufficient to show that he touched M.D. and E.D. for the purpose of gratifying his sexual desire.
*653 Mr. Davis's mental state during the touching rests on "circumstantial evidence and permissible inferences" and will be "dependent upon the circumstances of the particular case." A.B. v. Juvenile Officer , 447 S.W.3d 799, 804 (Mo. App. W.D. 2014) (citation omitted). Mr. Davis relies on this Court's holding in A.B. v. Juvenile Officer , to support his assertion that the State's evidence "relied on an inference of criminal purpose." In A.B. , a twelve-year-old boy was charged with sexual molestation in the first degree pursuant to section 566.067.1 after he touched the genitals of a five-year-old with his hand and mouth. Id. at 800-01.[2] The juvenile appealed and stated that the evidence was insufficient to find that he had committed the acts for the purpose of gratifying sexual desire. Id. at 803. This Court reversed the juvenile court's decision because we were "not persuaded that intent [could] be inferred from the act alone." Id. at 806.
This Court's holding in A.B . relied in significant part on In re J.A.H. , 293 S.W.3d 116 (Mo. App. E.D. 2009). Similar to A.B. , both the juvenile and the victim were younger than twelve. Id. at 117. On appeal, the juvenile argued that the Juvenile Officer (J.O.) had failed to prove that the acts were done for the purpose of sexual arousal or gratification.[3] Id. at 119. The J.O. argued that "there [was] no other discernible reason for [Juvenile] to have put his penis in T.H.'s mouth other than for sexual arousal or gratification." Id. at 122. The Eastern District was not persuaded by this argument. Id.
In both cases, we, and our sister court in the Eastern District, rejected the argument that intent could be inferred from the act alone. Mr. Davis argues that the circumstances in these cases are very similar to his own and, like in both cases, we should find the evidence to be insufficient. We disagree. One stark contrast between these cases and Mr. Davis's is that, unlike those defendants, Mr. Davis is a 56-year-old man, not a child, and there is no evidence that he was lacking basic knowledge of sex. In both holdings, we, and our sister court emphasized the age of both parties. In A.B. we quoted the following from J.A.H. ;
We recognize that, in certain circumstances, [other cases holding] that an adult's actions toward a child were done for "no other discernible reason" but for the purpose of sexual arousal or gratification, may be applicable in the juvenile context. We find it difficult, however, to apply [that holding] in this case, where [Juvenile] was eight or nine and [Victim] was five, six or seven, and there was no evidence regarding the [Juvenile's] behavioral development or knowledge of sexual subject matter. Without such evidence or more detailed information regarding the circumstances of the touchings, we are unwilling to find that an eight or nine year old touches his penis to the mouth of a five or six *654 year old for no discernible reason other than sexual arousal or gratification.
A.B. v. Juvenile Officer , 447 S.W.3d at 805-06 (quoting In re J.A.H. , 293 S.W.3d at 122 ). Not only does this statement make it clear that the "no other discernible reason" rule was not applied because of the age of both the defendants and victims, it specifically states that this rule can and has been applied in cases involving adults. We do not find these cases to be analogous to Mr. Davis's situation.
Mr. Davis's situation is much more comparable to cases like State v. Ganzorig , 533 S.W.3d 824, 830 (Mo. App. E.D. 2017) (held that "[t]ouching a woman's vagina is an inherently sexual act, which can alone serve as evidence of Defendant's intent to arouse or gratify either his or her sexual desire."), and State v. Love , 134 S.W.3d 719, 724 (Mo. App. S.D. 2004) (held that "defendant's touching of the crotch and breast areas of the children was not innocent contact" and therefore the evidence was sufficient to establish the defendant's intent to arouse or gratify sexual desire.")
The State's evidence demonstrates that over a relatively short period of time Mr. Davis made contact, either by touching or biting, with M.D.'s breast on three separate occasions and touched E.D.'s vaginal area while the children's Grandmother was at work. During the first instance, Mr. Davis asked M.D. to try on her swimming suit and when she needed help fastening it "he went under [the] swimsuit and touched [her] boob." Not long after that incident, Mr. Davis called M.D. into his bedroom and reached "under her shirt" and again "touched [her] boob" making skin-to-skin contact. E.D. came into the bedroom, witnessed this occurring, and the girls told Mr. Davis that they were going to tell their Grandmother. Mr. Davis then threatened to beat M.D.'s butt. After this exchange, the girls went to their Grandmother's room to watch television. Mr. Davis came into the room and began wrestling with the girls on the bed and during the tussle he bit M.D.'s "boob" and touched her "bad spot" in between her legs. A short time later, Mr. Davis asked M.D. to get him a Dr. Pepper which left E.D. alone with Mr. Davis. When M.D. returned, Mr. Davis was touching E.D. underneath her skirt where she goes "potty." Both girls told Mr. Davis that they were going to tell Grandmother.
As stated previously, this Court will not serve as fact-finder, we will not re-weigh the evidence, and we will ignore all evidence and inferences contrary to the State's evidence. The jury was presented with all of the facts, and, as the fact-finders, they are free to believe "all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." State v. Nash , 339 S.W.3d 500, 509 (Mo. banc 2011) (citation omitted). The jury in this case chose to believe the testimony and evidence provided by the State and chose to believe that Mr. Davis touched M.D. and E.D. for the purpose of arousing or gratifying sexual desire. We find the evidence to be sufficient and find that a reasonable juror could have concluded that Mr. Davis touched M.D. and E.D. for the purpose of arousing or gratifying sexual desire. Points one and two are denied.
In point three, Mr. Davis argues that the trial court abused its discretion in overruling his objections to jury instructions six through ten and the verdict directors therein. Mr. Davis claims that the jury instructions and verdict directors required the jury to find that Mr. Davis had "touched the breast of M.D. in his bedroom" between June 24 and 25, 2014. Mr. Davis claims, however, that these instructions were confusing and contradictory because there were multiple incidents that *655 could meet these parameters and, therefore, allowed the jury to find him guilty without having to identify and agree on the specific act he committed.
Mr. Davis argues that this point was preserved for this Court's review. We disagree. Rule 28.03 states that, "[c]ounsel shall make specific objections to instructions or verdict form considered erroneous." Counsel must state "distinctly the matter objected to and the grounds of the objection" and the objection "must also be raised in the motion for a new trial."
At trial, the following exchange occurred between the court and counsel for Mr. Davis regarding the verdict directors:
THE COURT: Does the defendant have any objections or additional requests to make to the Court's proposed instructions?
MS. RINNE: Your Honor, I do object to certain instructions on the basis of the fact that the charging date allows-is June 24th to 25th, June 24th or 25th. So the specific instructions I would be objecting to are No. 6, No. 7, No. 8, No. 9, and No. 10, two of those of course being converse instructions, the 7 and the 9.
But all of those have the dates from June 24th to the 25th. I object on that because I believe it will serve to confuse the jury. I also believe that it will allow the possibility of jurors finding Mr. Davis guilty on different offenses.
* * *
THE COURT: All right. And the reason the Court is allowing the submission of the case-this is done-the dates were the State's request and we had considered and discussed that.
But there was evidence certainly from [M.D.] today that the events occurred on June 25th; however, there's some earlier evidence that was admitted that made reference to the day before, I believe her videotaped interview and some other out-of-court statements that were received into evidence.
And so I think the State is allowed to allege that it happened between June 24th and June 25th. The Court has focused the jury on the event that they're to find and that is the allegation which-of [M.D.] that the defendant touched her breast in his bedroom and that's what paragraph first covers.
So I note your objection. The Court's considered it and the Court overrules it. Okay?
Counsel's objection is specific to the dates, as opposed to the actual descriptions of the acts themselves. Counsel objected on the basis that "the charging date allows-June 24th to 25th, June 24th or 25th... I object on that because I believe it will serve to confuse the jury." There is no mention of changing the description of the acts; Counsel is only asking that the dates be altered or removed.
Mr. Davis also claims that the issue was preserved because it was included in his motion for new trial. We again disagree. Mr. Davis's motion for new trial alleges the following trial court error:
16. The trial court erred to the prejudice of the Defendant in overruling the Defendant's objection to jury instructions number 6 through 10, inclusive, because such instructions gave the date of the alleged offense - i.e., touching of M.D.'s breast - as "between June 24 and June 25, 2014," instead of instructing on a specific date of either June 24, 2014 or June 25, 2014. The instructions as given, with the inclusive dates of June 24 and June 25, allowed different members of the jury to find the Defendant guilty under differing sets of facts, thereby violating the Defendant's rights to a unanimous jury verdict; furthermore, they are likely confusing to the jury.
*656 (emphasis added). The motion, like the initial objection, is focused solely on the dates of the offenses and does not mention anything about the descriptions of the acts themselves. Mr. Davis's attempts to broaden his objection on appeal cannot be permitted. Mr. Davis is "bound by the grounds specified at trial and cannot change or broaden his theory." § 103:1(c)(1). Missouri practice: objections and motions to strike, 22 Mo. Prac., William Schroeder Missouri Evidence § 103:1(c)(1) (4th ed.)
"The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury." 6 Am. Jur. Trials 605 (Originally published in 1967). This issue was not preserved for appeal. "An unpreserved claim of error can be reviewed only for plain error, which requires a finding of manifest injustice or a miscarriage of justice resulting from the trial court's error." State v. Celis-Garcia , 344 S.W.3d 150, 154 (Mo. banc 2011). "For instructional error to be plain error [Mr. Davis] must demonstrate more than mere prejudice; [he] must establish that the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." State v. Isbell , 524 S.W.3d 90, 93 (Mo. App. E.D. 2017) (emphasis added) (citation omitted).
"For a jury verdict to be unanimous[,] ... the jurors must be in substantial agreement as to the specific act or instance of criminal conduct supporting the conviction." State v. Gilbert , 531 S.W.3d 94, 101 (Mo. App. W.D. 2017) (corrected opinion filed November 1, 2017). "In multiple acts cases, the threat to unanimity exists when the verdict director lists the elements of the offense, and those elements could be satisfied by differing and distinct acts of the defendant introduced into evidence." State v. Rycraw , 507 S.W.3d 47, 60 (Mo. App. E.D. 2016). (citation omitted). To avoid unanimity issues, "(1) the State should elect the particular criminal act on which it will rely to support the charge, or (2) the verdict director should specifically describe the separate criminal acts presented to the jury and the jury should be instructed that it must agree unanimously that at least one of those acts occurred." Gilbert , 531 S.W.3d at 101.
Mr. Davis alleges that the testimony regarding M.D. was confusing and muddled at times and that the verdict directors did not differentiate the separate incidents. Instructions six through ten, which included the charged and lesser-included offenses, required the jury to find that Mr. Davis "touched the breast of M.D. in his bedroom." The evidence at trial revealed that Mr. Davis had made contact with M.D.'s breast in some way on three occasions. The first occurred when M.D. was trying on her swimsuit and when Mr. Davis fastened it "he went under [her] swimsuit and touched [her] boob." According to M.D.'s testimony this occurred outside the bathroom door. The second instance was when Mr. Davis called M.D. into his bedroom and he put his hand under her shirt and "touched [her] boob." The third and final instance was when the girls were in their Grandmother's room, watching television and Mr. Davis came into the room and began wrestling with them on the bed. M.D. testified that it was then that Mr. Davis bit her boob.
Only one of these instances matches the description provided in the verdict director. Instance one was a touching, but did not occur in Mr. Davis's bedroom. Instance two was a touching, and it occurred in Mr. Davis's bedroom. And finally, instance three was a biting, not a touching, *657 and it did not occur in Mr. Davis's bedroom.
Mr. Davis argues that the testimony surrounding these events was not clear because the testimony regarding the first instance (when M.D. was trying on her bathing suit) was confusing. When M.D. was first asked about this event on direct examination, she testified "grandpa called me in to try on my swimsuit." On cross-examination, counsel for Mr. Davis had the following exchange with M.D.:
Q: Where were you when he asked you to try on the swimsuit?
A: I was coming out of the bathroom and I needed somebody to fasten the top of my swimsuit.
Q: I'm sorry. Where were you when he asked you to try on your swimsuit?
A: In the bathroom.
* * *
Q: You were in the bathroom putting on your swimsuit. Then he asked you to put on your swimsuit. Is that right?
A: He asked me to go put my swimsuit on, so I went in the bathroom and was putting it on. And I needed somebody to fasten the top.
* * *
A: And then he was trying to fasten it. And instead of fastening it, he went under my swimsuit and touched my boob.
Q: And was [E.D.] there?
A: Yes.
Q: And where were you all?
A: Standing in front of the bathroom door.
While M.D.'s testimony may have been slightly unclear at times, when asked directly about where this occurred, she clearly states that it happened while standing in front of the bathroom door, and at no point does she ever say that it occurred in Mr. Davis's bedroom.
Mr. Davis also alleges that some confusion may have occurred as a result of the testimony provided by Officer Cates who, at that time, was a criminal investigator with the Buchanan County sheriff's department. Officer Cates testified that when he spoke with M.D. the day of the incident, she told him that she had "been in her grandpa's bedroom with her grandpa and he had asked her to try on a swimsuit. She said that "she had put the swimsuit on and he had told her that she looked really good in the bathing suit." Officer Cates also testified that Grandmother had told him that the girls had been wrestling with Mr. Davis on "grandpa's bed" when the biting occurred. Mr. Davis argues that this suggests that the biting incident and the bathing suit incident took place in his bedroom and not in Grandmother's bedroom and outside the bathroom as M.D. testified.
Officer Cates did not testify that M.D. told him the touching under the bathing suit took place in the bedroom. From this testimony all we learn is that M.D. and Mr. Davis were in his bedroom before she left to put on her swimsuit. This testimony does not negate M.D.'s testimony that the actual touching took place in the hall outside of the bathroom. As for the biting testimony-as mentioned previously-this was a bite, and not a touch. Even if Officer Cates confused the location, it still does not meet the description provided in the verdict director.
The dissent argues that the jury may have been confused by what qualifies as a touch and, therefore, may have considered the biting incident when interpreting the verdict director. The initial objection, the motion for a new trial, and the point on appeal never mention any confusion between touching and biting. The dissent is creating and analyzing an argument outside *658 the scope of the point. In the interest of thoroughness, however, we will respond.
There may have been some conflicting testimony regarding the location of the biting incident, and some of the testimony may have used the word touching in reference to the three incidents as a whole. There were, however, more than a few occasions throughout the course of the trial where the difference between bite and touch were made very clear.
In the State's opening statement, counsel made a distinction between the acts on multiple occasions.
• "You will hear that that day, that was the day that the defendant sexually touched both the girls on their genitals ... [y]ou will also hear that he touched-that he also touched [M.D.] on her breast and actually bit her right breast as she will testify to you."
• "... they were all wrestling around on the bed. And then [M.D.] will tell you that the defendant then touched her on her privates and on her breast and that that-that is when he bit her on her breast."
When counsel for Mr. Davis cross-examined Ms. Wilson (forensic investigator), the difference between biting and touching was once again discussed.
Q. Okay. And now she says not that he had bit her on the chest, but that he also touched her on the chest; right?
A. Yes, the day before the other areas.
* * *
Q. Now, as we said, at this point [M.D.] is talking about the two days. Correct? And she had earlier said that he had bit her on the boob; correct?
A. Yes.
Q. But according to what she circled on the diagram, you asked her to circle what grandpa touched her with in those areas; right? That's what you asked her?
A. At some point, yes.
Q. Okay. And she didn't circle his mouth; right?
A. I don't-I don't believe so.
This exchange discussing the videotaped interview demonstrates that even M.D. understood that "touch" is not the same as bite.
When Grandmother took the stand, she said that when she took the girls on a walk M.D. told her that Mr. Davis had "bit her breast and touched her down here, right here."
When M.D. took the stand, she testified that, while she was staying at her grandparents' house, Mr. Davis touched her breast on two different occasions and also bit it on another.
Q. What happened?
A. Grandpa asked me to try on my swimming suit and I needed somebody to fasten it. And he went to fasten it and he went under my swimsuit and touched my boob.
* * *
Q. Was there a different time that he had touched you somewhere?
A. Yes.
Q. Can you tell us about that?
A. He called me in his room and he touched me under my shirt.
When prompted by the State to describe a "different time that [Mr. Davis] had touched [her]," M.D. spoke about the incident that matched the verdict perfectly, and did not bring up the biting incident until asked specifically about it. It is reasonable to infer that M.D. herself perceived the biting incident as distinct from the two touching incidents.
*659 Additionally, the only question from the jury as it deliberated concerned the definition of first-degree child molestation and second-degree sexual abuse. The jury did not ask for the definition of touch, and they did not ask for clarification about which specific allegation they were meant to examine. There is nothing from the jury's deliberation that would make it apparent that the jury was confused.
Even if we assume that the jury's understanding of the word touch aligns with the definition provided by the dissent, we still find no plain error. The definition provided by the dissent states that touch is "to bring a bodily part briefly into contact with so as to feel." Webster's Third International Dictionary at 2415 (unabridged ed. 1993). We cannot agree that a reasonable person would think that a person bites another for the purpose of feeling with his or her teeth, and, after an extensive examination of Missouri case law, we find no such interpretation to support this idea.[4]
Mr. Davis relies on Celis-Garcia , which, like the present case, was a "multiple acts" case. In Celis-Garcia , the verdict director read as follows:
As to Count 1 regarding the defendant [ ], if you find and believe from the evidence beyond a reasonable doubt:
First, that between the dates of January 01, 2005 and March 31, 2006, in the County of Saline, State of Missouri, the defendant or [her boyfriend] placed her or his hand on [C.J.'s] genitals[.]
Id. at 154. The Defendant argued that the verdict directors "failed to ensure the jury reached a unanimous verdict because the verdict directors required only a general finding of hand-to-genital contact between the specified dates and did not require agreement by the jury on a specific incident of hand-to-genital contact to find her guilty." Id. at 155. The Defendant specifically argued that some of the jurors may have been confused because some may have believed that she placed her hands on the victim's genitals in the shed, and others may have disbelieved that evidence and, instead, believed the evidence about what happened in the bedroom or on the back porch. Id.
The verdict director in Celis-Garcia makes no attempt to narrow the focus on one specific act. The verdict director's description of the act, "placed her hands on [victim's] genitals," is not specific because all of the acts in question involved hand-to-genital contact. The only differentiating factor was the location of the incidents. The incidents were said to have occurred in the Defendant's bedroom, on the enclosed porch, in the shed, and in the bathroom. Id. at 156. The verdict director did not include a description of the location.
In the present case, the State made sure the verdict director was focused on not only a specific act, but a specific location as well. Unlike in Celis-Garcia , the verdict director focuses the jury's attention on an incident that involved the touching of M.D.'s breast in Mr. Davis's bedroom. The instruction was narrowed by not only the description of the act itself, but by the location as well.
It is also worth noting that the word "touch" was used in the verdict director for the charge pertaining to E.D. The only allegation involving E.D. was that Mr. *660 Davis touched her vaginal area with his hand. It is reasonable to infer that the jury would understand the word touch to mean the same type of action in both verdict directors.
While we agree that there was evidence of multiple instances of inappropriate touching or biting of M.D.'s breast and those instances happened in multiple locations, we find the verdict director to be sufficiently specific and find no error. Point Three is denied.
Conclusion
Mr. Davis has failed to demonstrate that the evidence was insufficient to find that he touched M.D. and E.D. for the purpose of arousing or gratifying sexual desire and has failed to demonstrate that the verdict director was erroneous and, therefore, prejudicial. We affirm.
Presiding Judge Thomas Newton writes for the majority.
Judge Gary Witt concurs.
Judge Alok Ahuja writes a dissent.
DISSENTING OPINION
Alok Ahuja, Judge
In his third Point, appellant Ronnie Davis, Sr. argues that the verdict director submitting Count I failed to ensure that the jury unanimously agreed on the act which supported his conviction of sexual abuse with respect to victim M.D. The majority rejects Davis' argument. It finds that his instructional error claim was not preserved and is accordingly only reviewable for plain error. On the merits, the majority concludes that the verdict director for Count I was sufficiently specific because it described a single act which could serve as the basis for Davis' conviction.
I respectfully dissent from the majority's disposition of Davis' third Point, and would reverse Davis' conviction on Count I, and remand for a new trial on that Count. The wording of the instruction under which Davis was convicted on Count I (Instruction No. 10) allowed the jury to convict him based on either of two different acts described in the evidence. Accordingly, we have no assurance that the members of the jury convicted Davis based on their unanimous conclusion that he had committed a particular unlawful act. Whether or not Davis properly preserved the issue, the instructional error involving Count I requires that we reverse Davis' conviction on that Count, and remand for a new trial.
We have recently explained:
Article I, section 22(a) of the Missouri Constitution protects the right to a unanimous jury verdict. [ State v. Celis-Garcia , 344 S.W.3d 150, 155 (Mo. banc 2011).] "For a jury verdict to be unanimous, 'the jurors [must] be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt.' " Id. (citations omitted). The issue of jury unanimity may be implicated in "multiple acts" cases. Id. "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." Id. at 155-56.
State v. Beck , No. WD80841, 557 S.W.3d 408, 414-15, 2018 WL 3118528, at *4 (Mo. App. W.D. June 26, 2018).
This was plainly a "multiple acts" case with respect to the allegation that Davis had sexually molested M.D. As the majority acknowledges, "[t]he evidence at trial revealed that Mr. Davis had made contact with M.D.'s breast in some way on three occasions." Because multiple distinct acts *661 could have supported Davis' conviction on Count I, to avoid jury-unanimity issues either
(1) the State should [have] "elect[ed] the particular criminal act on which it will rely to support the charge" or (2) the verdict director should [have] "specifically describ[ed] the separate criminal acts presented to the jury" and the jury should [have] be[en] "instructed that it must agree unanimously that at least one of those acts occurred."
State v. Gilbert , 531 S.W.3d 94, 101 (Mo. App. W.D. 2017) (quoting Celis-Garcia , 344 S.W.3d at 157 ).
Unfortunately, the verdict director for Count I did not follow either of the recommended approaches for avoiding jury-unanimity issues in a multiple acts case. The verdict director under which the Davis was convicted on Count I instructed the jury in relevant part:
If you find and believe from the evidence beyond a reasonable doubt:
First, that between June 24 and June 25, 2014, in the County of Buchanan, State of Missouri, the defendant purposely touched the breast of M.D. in his bedroom, and
Second, that defendant did so for the purpose of arousing or gratifying the defendant's sexual desire, and
Third, that defendant did so without the consent of M.D., then you will find the defendant guilty under Count I of sexual abuse in the second degree under this instruction.
Contrary to the majority, I believe the first element of this instruction, which required the jury to find that Davis "purposely touched the breast of M.D. in his bedroom," was insufficiently specific to ensure that the jury unanimously agreed on the conduct for which it convicted Davis. As worded, the verdict director comprehended at least two separate acts which were described in the evidence.
As the majority opinion explains, M.D. described three incidents in which Davis allegedly touched her breast. I put to one side the alleged touching which occurred when Davis asked M.D. to put on a swimsuit. While the evidence indicates that Davis may have asked M.D. to put on the swimsuit while she was in his bedroom, M.D. never testified that the subsequent touching occurred in Davis' bedroom. Instead, as the majority explains, the evidence indicates that this alleged touching occurred in the bathroom where M.D. changed into her swimsuit, or in the hallway outside the bathroom. The jury could not have relied on the swimsuit incident in finding that Davis "touched the breast of M.D. in his bedroom."
There remain, however, two different incidents on which the jury could have relied to convict Davis. As the majority recognizes, one of those incidents involves Davis' act of allegedly touching M.D.'s breast, under her shirt, with his hand. But there is a second incident which could also support conviction on Count I: the acti on in which Davis allegedly "tickled" M.D.'s vaginal area, and bit her breast, over her clothing while they were wrestling.
As the majority correctly notes, at trial M.D. testified that the biting incident occurred in her grandmother's separate bedroom. At trial, however, Deputy Thomas Cates, who interviewed M.D. and her family members on June 25, 2014, testified that M.D., her sister E.D., and the girls' grandmother all told him that the biting incident occurred in Davis ' bedroom. Thus, Deputy Cates testified that M.D.'s grandmother told him that M.D. "had informed her that they had all been wrestling on grandpa's bed and that their grandfather had bit her *662 on the breast area and had tickled her vaginal area."
Deputy Cates also testified that M.D. herself described the biting incident as occurring in Davis' bedroom. He testified that
[M.D.] stated that later on in the day [after Davis had purportedly asked her to try on her swimsuit,] she and [E.D.] and Mr. Davis had been wrestling on her grandfather's bed and he had touched her inappropriately.
Q Okay. And that's the word she used?
A Yes, that's the verbiage she used. She said "inappropriately."
Q And what did you say?
A I asked her what that meant when she said "inappropriately" and she stated that her grandfather had bit her here - she gestured towards her right breast area - and that he had tickled her here, and gestured towards her vaginal area.
Deputy Cates testified that the other victim, M.D.'s younger sister E.D., had also stated "that earlier in the day she and [M.D.] and her grandpa had all been wrestling on the bed in grandpa's room when grandpa had touched her and [M.D.]'s bad spots and she had gestured, again, towards her vaginal area as well."
Even though it conflicted with M.D.'s trial testimony, Deputy Cates' testimony relating what he was told by M.D., E.D. and by Grandmother was substantive evidence on which the jury could have relied. The circuit court specifically held that the statements that M.D. and E.D. made to Deputy Cates could be admitted as substantive evidence pursuant to § 491.075, RSMo. Notably, in its opening statement, the State described the biting incident consistently with Deputy Cates' testimony, as having occurred in Davis' bedroom.
Obviously, it was up to the jury to decide which evidence to believe, including whether to believe the location for the biting incident to which Deputy Cates testified, or instead to believe the location given by M.D. during her trial testimony. State v. Jackson , 433 S.W.3d 390, 398-401 (Mo. banc 2014). Given that the jury could have believed Deputy Cates' testimony, it could have found that this incident occurred "in [Davis'] bedroom," and thus that the biting incident fell within the verdict director under which it convicted Davis on Count I.
The majority also concludes that the biting incident could not have served as the basis for the jury's conviction on Count I, because "this was a bite, and not a touch." Maj. Op. at 657.[1] Although the majority points to "more than a few occasions" during trial in which counsel or witnesses distinguished between "biting" and "touching," the biting incident was described as a touching multiple times, and the jury could easily have found that the biting incident constituted the "touch[ing]" to which the verdict directors for Count I referred.
Most significantly, the victim herself described the biting incident as a form of "touching." During her forensic interview, M.D. plainly used the term "touching" to include the biting incident. Thus, when she first described the biting incident, she introduced *663 her description by saying that "[h]e touched me in two places." After M.D.'s disclosure, the forensic interviewer, Trenny Wilson, provided M.D. with an anatomically correct drawing of a female child. She then stated to M.D.: "You said he touched you in a couple of places - where did he touch you at?" M.D. responded by describing two different places in which she claimed Davis bit her (her breast, but also on her stomach), as well as his manual touching of her vaginal area. Thus, in her forensic interview, M.D. described the biting incident as a "touching" on more than one occasion.
Similarly, when forensic interviewer Wilson testified, she also explained that M.D. described the biting incident as a "touching" (along with Davis' alleged "tickling" of her vaginal area).
Q Okay. And she specifically said, "He touched me in two places." Right?
A Yes.
Q And then he said - did she say, "He tickled me there" and point to her vaginal area?
A Yes.
Q And then did she say, "He bit me in my other bad spot," pointing to her chest?
A Yes. Correct.
....
Q Okay. And so you repeated what she had said, that he had touched her in a couple of places; right?
A Yes.
Q And at that point did you allow her or ask her to circle the areas?
A Yes, I did.
Q And did she circle the chest?
A She did.
Q Okay. And again, she said he bit her there; right?
A Yes. Correct.
Q And then did she circle the vaginal area?
A Yes.
Q And she said he tickled her there; right?
A Yes.
Deputy Cates also testified that the victim described the biting incident as a form of touching. In the passage quoted above, Deputy Cates testified that M.D. told him that Davis "had touched her inappropriately." Deputy Cates testified that he then "asked her what that meant," and M.D. then "stated that her grandfather had bit her here - she gestured towards her right breast area - and that he had tickled her here, and gestured towards her vaginal area." Thus, like in her forensic interview, M.D. described the biting incident as a "touching" on the date she made her first disclosure.
Finally, even the prosecution referred to the biting incident as a touching during its opening statement. In a passage quoted in the majority opinion, the prosecutor explained that Davis and his granddaughters
were all wrestling around on the bed. And then [M.D.] will tell you that the defendant then touched her on her privates and on her breast and that that - that is when he bit her on her breast.
The "touch[ing] ... on her breast" to which the prosecution referred in this passage is the incident "when [Davis] bit her on her breast." Thus, the jury was informed that the biting incident was a "touching" beginning in the prosecution's opening statement.[2]
*664 For these reasons, it is undeniable that the jury could have relied on the biting incident to convict Davis on Count I, in addition to - or instead of - the separate incident on which Davis touched M.D.'s breast under her shirt with his hand. Evidence in the record indicated that the biting incident occurred in Davis' bedroom, and the jury could plainly have found that the biting incident constituted an improper "touching." Because the jury could have relied on two separate incidents to convict Davis on Count I, the verdict directors on Count I were erroneous, and require a new trial on that Count.
Although the State has not argued that Davis failed to preserve his jury-unanimity claim, the majority finds that the argument was not preserved, and is reviewable only for plain error. I disagree. As the majority explains, during the instruction conference, Davis' objections to the verdict directors on Count I focused on the fact that the Court was instructing the jury that the challenged incident(s) occurred on June 24 or June 25, 2014. But Davis' counsel explained that the problem with the two-date range was that it created the possibility of a non-unanimous jury verdict, because it could conceivably refer to both the biting incident and the touching-under-the-shirt incident, and "will allow the possibility of jurors finding Mr. Davis guilty on different offenses."[3] The court responded to this concern by stating that "[t]he Court has focused the jury on the event that they're to find and that is the allegation which - of [M.D.] that the defendant touched her breast in his bedroom and that's what paragraph first covers." Thus, the circuit court plainly understood the nature of Davis' jury-unanimity objection, and believed that it had addressed the issue.
In any event, even if there were a preservation issue, the claim would still be reviewable for plain error, and we have found plain error where the jury could have convicted based on more than one act, but the instructions failed to distinguish between them. Thus, we have found that verdict directors like the ones at issue here, which fail to distinguish among multiple acts which could each support conviction, to be, "on their face, plainly erroneous."
*665 State v. Carlton , 527 S.W.3d 865, 877 (Mo. App. E.D. 2017) ; Beck , 557 S.W.3d at 416-17, 2018 WL 3118528, at *6. This plain error resulted in a manifest injustice. The jury heard about the biting and hand-to-breast incidents during opening statements, throughout the evidence, and in closing arguments. Because "[t]he plain language of the verdict directors ... allowed non-unanimous verdicts," Beck , 557 S.W.3d at 418, 2018 WL 3118528, at *7, and permitted individual jurors to select for themselves the act on which they relied to convict, "the plainly erroneous verdict directors created a juror free-for-all that resulted in manifest injustice by negating [Davis'] constitutional right to a unanimous jury verdict." Carlton , 527 S.W.3d at 878.
I would accordingly reverse Davis' conviction on Count I, and remand to a new trial on that count.

All statutory references are to R.S.Mo. 2000, through the 2014 Non-Cum. Supp., unless otherwise indicated.

Unlike the present case, the juvenile was adjudicated delinquent by a judge in a bench trial for committing acts constituting first-degree sexual molestation. A.B. v. Juvenile Officer , 447 S.W.3d 799, 801-03 (Mo. App. W.D. 2014).

There were two separate acts at issue in J.A.H. One occurred while the boys were showering together and the Juvenile took a hard sponge and rubbed it back and forth across the victim's penis. In re J.A.H. , 293 S.W.3d 116, 120 (Mo. App. E.D. 2009). The second act occurred while the two boys were playing doctor, and the Juvenile got on top of the victim and put his penis in or near the victim's mouth. Id. at 121. The Eastern District was quick to say that there was absolutely no evidence that the shower incident was for the purpose of sexual arousal or gratification. Id. at 120.

As is pointed out by the dissent, the word "touch" is used to define sexual contact in section 566.010 and applies to all of chapter 566. This case does not involve statutory interpretation, and our analysis here should not be read as such. While we have found no instance where a bite has been defined as a touching, we do not interpret the statute to mean that it could never be considered a touch.

The majority accuses me of "creating and analyzing an argument outside the scope of the point" by discussing whether the biting incident could constitute a "touch[ ]" within the meaning of Instruction 10. The Point Relied On and Argument of Davis' brief both explicitly argue, however, that all three breast-contact incidents - including the breast-biting incident - met Instruction 10's description of the charged act. In resolving Davis' claim, it is obviously necessary to address whether the act of biting could constitute the "touch[ing]" described in the instruction. This is not my issue, but Davis'.

Recognizing that the biting incident could be considered a "touching" is consistent with the primary dictionary definition of the term "touch": "to bring a bodily part briefly into contact with so as to feel." Webster's Third New International Dictionary 2415 (unabridged ed. 1993).
It is also significant that Davis was convicted under § 566.101, RSMo Cum. Supp. 2013, which prohibits a person from "purposely subject[ing] another person to sexual contact without that person's consent." Section 566.010(3), RSMo Cum. Supp. 2013, defines "sexual contact" to be
any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person.
This definition is significant for at least two reasons. First, it plainly contemplates that "touching" can occur with other body parts besides the hands, since it refers to the touching of another person "with the genitals." In addition, the only way in which contact-by-mouth could constitute "sexual contact" would be if that contact-by-mouth (whether biting, kissing, licking or sucking) constituted "touching." At oral argument, counsel for the State acknowledged that it would be the State's position that Davis' act of biting M.D.'s breast - if undertaken to gratify or arouse sexual desire - constituted an act of "sexual contact." It is inconsistent to say that the biting incident constituted "touching" within the meaning of the statute , but would not have been understood as a "touching" for purposes of the verdict-directing instructions (which were obviously patterned after the statutory language).

Similarly, Davis' new-trial motion specifically complained that "[t]he instruction as given, with the inclusive dates of June 24 and June 25, allowed different members of the jury to find the Defendant guilty under different sets of facts, thereby violating Defendant's rights to a unanimous jury verdict."