**STATE of Missouri, Respondent,**

**v.**

**Jamar Markeise STATEN, Appellant.**

**WD 79868**

Missouri Court of Appeals,
Western District.

OPINION FILED: July 18, 2017

---

Nathan J. Aquino, Jefferson City, MO, for respondent.

Ellen H. Flottman, Columbia, MO, for appellant.

Before Division One: James E. Welsh, Presiding Judge, Lisa White Hardwick, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

The Appellant Jamar Staten ("Staten") appeals from his convictions following a jury trial before the Circuit Court of Pettis County, for one count of assault in the first degree, section 565.050, and one count of armed criminal action, section 571.015.[1] Staten argues that the trial court abused its discretion in overruling his motion for a mistrial following *voir dire* because the venire panel was tainted by the comments of a veniremember that resulted in a violation of Staten's rights to due process, a fair and impartial jury, and to be tried only for the crimes charged. We affirm.

## Factual Background

Staten was indicted on September 16, 2015 for one count of assault in the first degree and one count of armed criminal action. At trial, the evidence was that Staten and his brother Rodney Jackson ("Jackson") went to a party attended by Jackson's girlfriend Crystal Coke ("Coke") on or about August 2, 2015. Coke refused to leave the party and had an argument with Jackson. The hosts of the party, Alex and Shandi Kosgei, requested that Jackson and Staten leave. The two men left the party but returned shortly thereafter. A confrontation ensued between Alex Kosgei ("Alex"),[2] Coke, Staten, and Jackson that resulted in the stabbing of Alex. Alex testified that Staten lunged toward him and stabbed him in the stomach. Two additional witnesses testified that they saw Staten lunge toward Alex, which was followed by Alex dropping to the ground with a stab wound.

Prior to trial during *voir dire*, the prosecutor asked the venire panel whether anyone had prior dealings with himself or defense counsel. Veniremember #47[3] responded as follows:

[VENIREMEMBER #47]: I am a retired State Trooper for the State of Missouri, and I've had dealings with the Defendant's family down through the years.

[PROSECUTOR]: Okay.

[VENIREMEMBER #47]: And I've worked hand in hand with the prosecutor's office.

[PROSECUTOR]: Okay. Are those prior dealings, do you think, would lead you to be incapable of being fair and impartial here today?

[VENIREMEMBER #47]: Not necessarily, but I've got to be honest with you and tell you I think it has influenced me somewhat.

Later, when asked by defense counsel whether anyone on the panel knew Staten's family, Veniremember #47 responded that he "[knew] them professionally, the family for the past 20 years."

Following the public examination of the venire panel, the court addressed private answers from persons on the panel out of

---

1. All statutory citations are to RSMo 2000 as updated through the December 31, 2016 cumulative supplement, unless otherwise indicated.

2. The Court will refer to Alex Kosgei by his first name to distinguish him from his wife Shandi Kosgei. No familiarity or disrespect is intended.

3. We do not refer to any veniremembers by name out of respect for their privacy.

the hearing of the rest of the panel. Of relevance here, Veniremember #25 had the following exchange with the trial court and counsel:

THE COURT: Next, Number 25. That's [Veniremember #25]: You wish to respond further?

[VENIREMEMBER #25]: Yes. I believe—I'm not—I'm not sure, but there was an officer behind me, I believe it was [Veniremember #47].

THE COURT: Uh-huh.

[VENIREMEMBER #25]: And he stated if he had any experience with the Defendant, and he so stated that, yes, he did, and it had to do with some drug-related charges.

THE COURT: Uh-huh.

[VENIREMEMBER #25]: I believe that's what I heard. And so, it just seems to me that automatically, the panel knows the Defendant has priors, and specifically drug cases. It seems to me, not having ever served on a jury before, that that would bias the jury and I—I just asked for point of law on that.

THE COURT: Questions?

[PROSECUTOR]: So that I know that I'm clear, because, obviously, I know what his history is and what it is not. You believe you heard something that you think was directed towards the Defendant?

[VENIREMEMBER #25]: I believe I heard a law enforcement officer or an officer with prior service who professionally knew the Defendant—

[PROSECUTOR]: Was it the Defendant—

[VENIREMEMBER #25]: —because of—well, at that point, we hadn't talked about the Staten family. At that point, it was only Jamar. And he said, yes, I was familiar with the Defendant and it had to do—or something with previous drug charges or case—or something like that. But it was enough that in my mind I immediately thought, well, the Defendant has got a record and so, in the minds of people, that's going to bias him. Not knowing any of the facts of these current charges, it just seems to me, as I consider myself—

THE COURT: You're concerned that you were tainted based on what you heard or think you heard?

[VENIREMEMBER #25]: Yes. And I—I would think that any other normal person would also click on that.

THE COURT: Anything else?

[PROSECUTOR]: I haven't got anything?

THE COURT: Question?

[DEFENSE COUNSEL]: If it turns out that Jamar Staten personally does not have any prior criminal history, would that remedy the situation?

[VENIREMEMBER #25]: Oh, yes, absolutely. I would ask why would the law-enforcement officer state—

THE COURT: I think what he said was he's familiar with the family of the Defendant. I don't think [Veniremember #47] has been a law enforcement for, what, 20 years? And this defendant is fairly young, and I don't think he was a law enforcement officer when this young man was alive.

[VENIREMEMBER #25]: Okay. Okay. If—if—

THE COURT: I think he's referring to the family with that name.

[VENIREMEMBER #25]: Okay. I just—it just bothered me, you know, that—

THE COURT: Understood.

[VENIREMEMBER #25]: Because your instructions to the panel is that they're not to talk about this or—or this and that.

THE COURT: We're sensitive to not let anybody know in a case about prior criminal history of any kind.

[VENIREMEMBER #25]: Yeah. I would—I would think so, so that was—

THE COURT: Is that it?

[PROSECUTOR]: Thank you, [Veniremember #25].

[DEFENSE COUNSEL]: Thank you for understanding. Thank you.

[VENIREMEMBER #25]: Thank you. I appreciate it.

No other veniremember came forward with any information or concerns regarding comments from Veniremember #47.

Defense counsel moved for a mistrial, arguing the entire panel was tainted because Veniremember #25 had allegedly heard Veniremember #47 make disparaging comments about Staten and past drug charges. Defense counsel inferred that other members of the panel likely heard these comments as well, even though no other member came forward to report having heard such statements. The State argued that Veniremember #25 may have misheard or misinterpreted some response that Veniremember #47 had made regarding his law enforcement experience and that there was no indication that the entire panel was tainted except for Veniremember #25. The trial court found that it believed Veniremember #25 had misheard Veniremember #47's answers to venire questions and denied the motion. Neither Veniremember #47 nor Veniremember #25 served on the jury that heard evidence in this matter. Staten raised this claim of error in his motion for a new trial, which was denied by the trial court. Staten now appeals.

## Standard of Review

The granting of a mistrial is a drastic action that should only be taken

in those circumstances where no other curative action would remove the alleged prejudice suffered by the defendant. *State v. Pickens*, 699 S.W.2d 12, 13 (Mo. App. E.D. 1985). A trial court's decision to deny a motion for mistrial will only be overturned upon a finding that the trial court abused its discretion. *State v. Barton*, 240 S.W.3d 693, 702 (Mo. banc 2007).

*State v. Stone*, 280 S.W.3d 111, 116 (Mo. App. E.D. 2009). "Judicial discretion is deemed abused only when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Neff*, 978 S.W.2d 341, 345 (Mo. banc 1998).

## Analysis

In his sole point on appeal, Staten argues that the trial court abused its discretion in overruling his motion for a mistrial during *voir dire* because the jury selection process violated Staten's due process right to a fair trial, a fair and impartial jury, and his right to be tried only for the crimes charged in that the entire venire panel was tainted by the comments of Veniremember #47 who said to the veniremembers sitting nearby that Staten and his family had been involved in drugs.

The defendant has a right to a fair and impartial jury. *James v. State*, 222 S.W.3d 302, 305 (Mo. App. W.D. 2007). "To qualify as a juror, the [venireperson] must be able to enter upon that service with an open mind, free from bias and prejudice. If a juror cannot be fair and impartial, then the juror must be stricken." *Id.* (internal quotations and citations omitted). Sometimes a veniremember may make a comment that could bias other members of the venire panel, but "[t]o justify striking the entire panel, the veniremember's com-

ments must be so inflammatory and prejudicial that it can be said defendant's right to a fair trial has been infringed." *State v. Sprinkle,* 122 S.W.3d 652, 668-69 (Mo. App. W.D. 2003) (citing *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991)). It is Staten's burden to demonstrate prejudice from the contested statements. *Id.* at 669. "Disqualification of an individual juror due to remarks indicating bias or prejudice is generally not a sufficient ground in itself to challenge the entire jury panel." *Id.* (quoting *State v. Jordan,* 947 S.W.2d 95, 96 (Mo. App. W.D. 1997)).

■ Prior to addressing whether Veniremember #47's statements required the trial court to quash the entire venire panel, we must resolve what appears to be a fundamental factual disagreement between Staten and the State regarding the challenged comments. Staten argues that Veniremember #47 made statements regarding his prior law enforcement experience with Staten and his knowledge of previous drug charges or cases against Staten based on the court's colloquy with Veniremember #25 during *voir dire* which was conducted out of the hearing of the other veniremembers. As these alleged statements are not recorded in the transcript of the *voir dire* proceedings, Staten concludes that these statements must have been made by Veniremember #47, not in questioning during *voir dire* but on his own within the hearing of Veniremember #25, and he assumes the statements were overheard by the entire venire panel. The State argues, as found by the trial court, that there were no extraneous statements made by Veniremember #47; rather, Veniremember #25 misheard or misremembered Veniremember #47's statements in questioning during *voir dire* and the only statements made by Veniremember #47 are those reflected in the transcript.

A close reading of Veniremember #25's comments to the trial court during questioning regarding Veniremember #47's alleged statements regarding Staten supports the trial court's finding, and the State's argument on appeal, that Veniremember #25 must have misheard, misinterpreted, or misremembered the statements made by Veniremember #47 during questioning of the venire panel. Veniremember #25 expressed the following concern to the trial court:

VENIREMEMBER #25: Yes. I believe—I'm not—I'm not sure, but there was an officer behind me, I believe it was [Veniremember #47].

THE COURT: Uh-huh.

VENIREMEMBER #25: *And he stated if he had any experience with the Defendant, and he so stated that, yes, he did, and it had to do with some drug-related charges.*

THE COURT: Uh-huh.

VENIREMEMBER #25: I believe that's what I heard. And so, it just seems to me that automatically, the panel knows the Defendant has priors, and specifically drug cases.

(emphasis added). As we explained *supra,* Veniremember #47, in response to a question regarding whether any member of the panel had any experience with the prosecutor or defense counsel, responded that he had worked with the prosecutor's office and had prior experience with Staten's family. Veniremember #25 appears to have believed that Veniremember #47 responded that he did have experience with Staten and it had something to do with drug related charges. Veniremember #25 never explicitly says or implies that he heard these statements apart from the in-court questioning of the panel, and though he had every opportunity to do so, Staten never clarified this point with Veniremember #25. Staten also seems to believe

that the entire panel would have heard Veniremember #47's alleged statements, which further suggests that this was not an extraneous statement by Veniremember #47 outside of the courtroom but something said in response to public questioning of the panel.

Nothing in the record requires the factual conclusion that some improper discussion was held by the jurors outside of the courtroom or off of the record. Veniremember #25's statements regarding what he heard were prefaced with language of uncertainty, "I believe—I'm not—I'm not sure...." "I'm not sure," and "I believe that's what I heard." Staten did not inquire of Veniremember #25 as to whether the statements he believed he heard were in open court or outside of the courtroom, and he did not inquire as to whether any other venireperson would have also overheard the statements if they did in fact occur outside of the courtroom. It appears, based on this record, that Veniremember #25 assumed that when the member of law enforcement on the panel stated that he had professional dealings with the Staten family that this meant he had investigated or arrested members of the family. This conclusion is further supported by the fact that no other member of the panel mentioned to the trial court that they had heard or received additional information from another veniremember. Neither Veniremember #25 or #47 served on the jury.

We agree with the trial court's factual conclusion that it is likely that Veniremember #25 simply misheard, misinterpreted or misremembered Veniremember #47's answers during the questioning of the venire panel. The trial court, having been present throughout *voir dire* and having had the ability to observe the veniremembers and the questions asked and answers given, is entitled to deference with respect to its credibility determinations. *See Nadolski v. Ahmed*, 142 S.W.3d 755, 767 (Mo. App. W.D. 2004) (deferring to trial court's credibility determinations regarding nondisclosure during *voir dire*).

■ Based on Veniremember #47's statements that are reflected in the court's transcript, we see nothing that is prejudicial or inflammatory so as to merit the quashing of the entire venire panel. Veniremember #47's generic statement that he had been a law enforcement officer, had worked closely with the prosecutor's office, and had dealings with the Staten family over the years and that those experiences could influence his fairness or judgment on the case is not so prejudicial or inflammatory as to require striking the entire panel. *See State v. Lacy*, 851 S.W.2d 623, 630-31 (Mo. App. E.D. 1993) (veniremember's statement that he knew and had dealings with defendant and defendant's family, had predetermined ideas about the case, and could not be fair or impartial did not require striking of entire venire panel); *Skipper v. State*, 209 S.W.3d 552, 555-56 (Mo. App. S.D. 2006) (denying ineffective assistance claim for lack of prejudice where veniremember's statement that she knew things from defendant's past and it would be hard for her to be fair and impartial because it did not taint the jury); *Riley v. State*, 475 S.W.3d 153, 159-60 (Mo. App. E.D. 2014) (denying ineffective assistance of counsel claim for lack of prejudice where two veniremembers stated that they knew defendant and his parents and already believed he was guilty without hearing the evidence because it did not taint the jury).

Staten, in fact, does not argue on appeal that Veniremember #47's statements in response to public questioning of the panel were prejudicial or inflammatory but, rather, only that the alleged extraneous statements regarding Veniremember #47's ex-

perience with Staten *and previous drug charges* deprived Staten of his right to a fair trial. The record does not support this argument.

We conclude that the trial court did not abuse its discretion in denying Staten's motion for a mistrial.

The point is denied.

### Conclusion

The judgment of the circuit court is affirmed.

All concur