

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI,           )
                                      )
           Respondent,       )
                                      )
v.                                   )         WD82193
                                      )
OWEN LEE ROBERTS,        )         Opinion filed:  December 24, 2019
                                      )
           Appellant.         )

**APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI**
**THE HONORABLE DAVID L. BOLANDER, JUDGE**

Division One:  Edward R. Ardini, Jr., Presiding Judge,
Mark D. Pfeiffer, Judge and Cynthia L. Martin, Judge

Owen Roberts ("Roberts") appeals his convictions of two counts of assault in the first degree and two counts of armed criminal action entered by the Circuit Court of Buchanan County following a jury trial. Roberts asserts that the trial court abused its discretion by overruling his motion for mistrial following the prosecutor's statement during *voir dire* that the jury would not be deciding punishment, arguing that the statement revealed to the venire panel that Roberts had prior criminal convictions. We affirm.

**Factual and Procedural Background**

On the night of May 14, 2016, Ricky Snedden ("Snedden") returned to his home in St. Joseph, Missouri, with his wife and children. Snedden's friend Terry Madewell ("Madewell")

lived in a loft above Snedden's garage, and Roberts would visit the residence "off and on." As Snedden was putting his children to bed, Roberts entered the home carrying a .22 lever-action rifle belonging to Snedden and requested some ammunition. Snedden provided Roberts with a different .22-caliber rifle that belonged to his wife along with some ammunition, and Roberts left the home. It was Snedden's understanding that Roberts was borrowing the rifle and would return it at a later time.

The following morning, Snedden was awakened by the sound of his barking dog. He went outside and heard Roberts descending the stairs in the garage that led to the apartment where Madewell was staying. Roberts emerged from the garage, asked Snedden why he had set him up, and then motioned towards the garage and stated, "I already took care of him." Roberts then shot Snedden in the side with the rifle he had obtained from Snedden the night before. After Snedden repeated that he had not set him up, Roberts again shot Snedden, this time in the lower back.

Snedden retreated into his home and used the residence's land-line to call 911. Roberts terminated the call before Snedden could report the shooting. When the 911 operator called back, Roberts answered, identified himself as Snedden, and explained that the original call was the result of children playing with the phone. Snedden used his cell phone to again call 911 and reported the shooting. Roberts left the scene in a blue Dodge pickup truck belonging to Snedden's wife that was parked in the driveway.

Based on the 911 calls, officers were dispatched to Snedden's home. Snedden told officers that he had been shot by Roberts and that there might be another victim in the apartment located above the garage. In the apartment, officers found Madewell sitting in a recliner with his head in his hands and his hair matted with blood. Madewell had been shot in the head and had facial

swelling, lacerations, and fluid coming from his ears and on his face and jaw areas.[1] Two .22-caliber rifle casings were found near the chair where Madewell was found.

Later that afternoon, Roberts drove the blue Dodge pickup truck to the home of an acquaintance in Gladstone, Missouri. The acquaintance was not home but Roberts spoke with the acquaintance's wife. Roberts told the wife that he had shot two people in St. Joseph that morning and that the gun he had used was in the pickup truck. Roberts explained that he shot one of the individuals in the head and the other in the liver "because [Roberts] wanted him to live" and he "wanted them to know who did it." After Roberts left, the wife called her husband and police.

Roberts was later located by police and interviewed. During the interview, Roberts admitted to being in St. Joseph and driving the blue pickup truck belong to Snedden's wife on the day of the shooting but denied shooting Snedden and Madewell

Roberts was charged as a prior and persistent offender with two counts of assault in the first degree and two counts of armed criminal action.[2] He was found guilty following a jury trial of all four counts. The trial court sentenced him to fifteen years in the Missouri Department of Corrections for each assault count with those sentences to be served consecutive to each other. He was also sentenced to five years for each armed criminal action count, and each of those sentences were ordered to run concurrent with the sentences for the associated assault counts. Roberts appeals his convictions.

## Discussion

In his sole point on appeal, Roberts alleges that the trial court abused its discretion in overruling his motion for a mistrial during *voir dire* following the prosecutor's statement that the

---

[1] Madewell died prior to trial from causes unrelated to the events of this case.

[2] Roberts was initially charged in two separate cases, one for each victim. The cases were joined for trial.

jury would not be deciding punishment, arguing that the statement revealed to the venire panel that Roberts had prior convictions. We find no error.

During *voir dire*, the State asked whether any member of the venire or member of their family had been prosecuted by the Buchanan County Prosecuting Attorney's Office. Relevant to this appeal, the following exchange occurred with Venireperson No. 31:

[Prosecutor:] All right. We'll start with Juror No. 31, [ ].

[Venireperson No. 31:] My brother and sister.

. . .

[Prosecutor:] And do you believe that they were treated fairly?

[Venireperson No. 31:]: Were they prosecuted fairly? Yes.

[Prosecutor:] And that's what I mean. I'm looking for . . . treated fairly that way. Is there anything about that experience that would make it difficult for you to be fair and impartial in this case?

[Venireperson No. 31:] Yeah. I'm probably not going to send anybody to prison. I can tell you I won't.

[Prosecutor:] All right. Well, I appreciate that candidness. And you understand that the Court's going to give instructions that you're to consider –

[Venireperson No. 31:] Yeah. And I can be impartial, but I'm not going to send anybody to prison.

[Prosecutor:] Now, also in this case you understand the jury, should they – should the jury vote for guilty, you would not be deciding sentence.

[Venireperson No. 31:] Right.

[Prosecutor:] Would that make it so you can be fair and impartial?

[Venireperson No. 31:] I believe I can be fair and impartial, yes.

[Prosecutor:] In deciding guilty or not guilty?

[Venireperson No. 31:] Guilty or not guilty, yes.

[Prosecutor:] Okay. But if it were – if it was your decision whether or not to send somebody to prison, you could not make that decision?

[Venireperson No. 31:] Right.

[Prosecutor:] Okay.

Following this discussion, defense counsel moved for a mistrial, arguing that the prosecutor's statement that the jury would not be deciding punishment was improper "[b]ecause half of [the jurors] here have had jury experience, so they know that if they're not doing the punishment, that my client must have a criminal record." The trial court denied the request for a mistrial, stating that "it is unlikely that most people know the qualifications of that[,]" and "I do think that the question overstepped the bounds, but I don't think it taints the jury pool, so I won't declare a mistrial based on that question."

No further mention was made of prior convictions or assessing punishment during *voir dire* or trial.

"The purpose of the voir dire examination is to ferret out biases and prejudices that would prevent potential jurors from deciding the case on the basis of the evidence and the law." *State v. Simms*, 859 S.W.2d 943, 946 (Mo. App. E.D. 1993) (citation omitted). "The trial court 'is generally vested with wide discretion in the conduct of *voir dire*[,]' and, thus, has 'discretion to judge the appropriateness of specific questions[.]'" *State v. Beckett*, 540 S.W.3d 881, 886 (Mo. App. W.D. 2018) (quoting *State v. Oates*, 12 S.W.3d 307, 310 (Mo. banc 2000)). "The granting of a mistrial is a drastic action that should only be taken in those circumstances where no other curative action would remove the alleged prejudice suffered by the defendant." *State v. Staten*, 524 S.W.3d 186, 190 (Mo. App. W.D. 2017) (citation omitted). "A trial court's decision to deny a motion for mistrial will only be overturned upon a finding that the trial court abused its discretion." *Id*. (citations omitted). "'Judicial discretion is deemed abused only when a trial court's ruling is clearly

5

against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *State v. Neff*, 978 S.W.2d 341, 345 (Mo. banc 1998)). "On appeal we will only reverse where the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Byers*, 551 S.W.3d 661, 666 (Mo. App. E.D. 2018) (citation omitted).

Roberts asserts that the trial court abused its discretion by denying his motion for mistrial after the State indicated during *voir dire* that the jury would not be asked to decide punishment in this case. Roberts argues that this information had the effect of disclosing to the jury that he had prior convictions.[3]

"In general, evidence of uncharged misconduct and prior convictions is inadmissible to show a defendant's propensity to commit such crimes, for fear that the jury would convict the defendant based on the propensity rather than on the evidence presented to support the particular crime charged." *State v. Young*, 582 S.W.3d 84, 91 (Mo. App. E.D. 2019) (citation omitted). However, "[v]ague and indefinite references to misconduct do not warrant a mistrial unless the reference is clear evidence of the defendant's involvement in another crime." *Byers*, 551 S.W.3d at 667 (citations omitted).

During *voir dire*, a venireperson indicated that her brother and sister had been previously prosecuted by the Buchanan County Prosecuting Attorney's Office and that she was "probably not going to send anybody to prison." In an effort to determine whether the venireperson's experience with the criminal justice system would impair her ability to be a fair and impartial juror during the

---

[3] Under section 557.036.4, RSMo, "the [trial] court, and not the jury, shall assess punishment if: (1) [t]he defendant requests in writing, prior to voir dire, that the court assess punishment in case of a finding of guilt; or (2) [t]he state pleads and proves the defendant is a prior offender, [or] persistent offender[.]"

Statutory citations are to the Missouri Revised Statutes, updated through the 2015 supplement.

guilt phase, the prosecutor noted that the jury would not be deciding punishment in this case. The prosecutor's comment was accurate and, contrary to his claim on appeal, in no manner disclosed that Roberts had prior criminal convictions.

This same issue was addressed in *State v. Simms*, 859 S.W.2d 943 (Mo. App. E.D. 1993). In *Simms*, the State informed the venire panel that the trial court would determine the defendant's sentence if he was found guilty. *Id*. at 946. The defendant claimed, as Roberts does now, that the prosecutor's statement constituted evidence of other crimes, and should have been excluded. *Id*. The eastern district of this Court rejected this argument:

> We find that defendant failed to demonstrate that the prosecutor's statement constituted evidence of other crimes. Nothing in the record indicates that the statement exposed the jury to information adverse to defendant. No one revealed the reason why the judge, and not the jury, would be determining punishment, or that the reason had anything to do with other crimes.

*Id*. We similarly find that the prosecutor's statement made during *voir dire* in the present case did not disclose or imply to the jury any previous criminal activity by Roberts.[4] Therefore, the trial court did not abuse its discretion in overruling Roberts's motion for mistrial.

Point denied.

---

[4] Roberts argues that several members of the venire had previously served as jurors in criminal trials and that "[i]t is highly likely that these individuals actually knew the reason they would not be participating in the penalty phase of the trial was because Mr. Roberts had prior convictions and thus would be sentenced by the court." This assertion is founded on the assumption that members of the venire understood that a jury is not involved in sentencing when the State "pleads and proves the defendant is a prior offender [or] persistent offender" under section 557.036.4(2), RSMo. Aside from the profoundly speculative nature of this argument, it also ignores a separate and more benign basis for removing the assessment of punishment from the jury that has no relation to the defendant having a criminal history. Under 557.036.4(1), RSMo, the trial court, not the jury, determines punishment if "[t]he defendant requests in writing, prior to voir dire, that the court assess punishment in case of a finding of guilt[.]"

**Conclusion**

Roberts's convictions for assault in the first degree and armed criminal action are affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.