

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI,          )
          )
       Respondent,       )
          )
v.          )       WD82665
          )
DAMON D. MARLEY,       )       Opinion filed:  April 21, 2020
          )
       Appellant.       )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## THE HONORABLE GEORGE E. WOLF, III, JUDGE

Division Three:  Anthony Rex Gabbert, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

Damon Marley ("Marley") appeals his conviction for domestic assault in the second degree entered by the Circuit Court of Jackson County following a jury trial. We affirm.

## Factual and Procedural Background

B.P.[1] and Marley first met and began a relationship when they were teenagers. The relationship lasted a year, after which they went their separate ways. During this period apart, B.P. had a daughter, A.M. In 2012, B.P. and Marley reunited, and in 2014, they married.

In 2017, B.P. told Marley that she wanted to end their relationship. Marley was upset, and he threatened B.P. with messages like, "if he couldn't be with [B.P.], no one could."

---

[1] We use initials to identify the victim to protect her identity pursuant to section 595.226.1, RSMo.

Statutory references are to the Missouri Revised Statutes 2016, updated through the 2017 supplement.

On October 26, 2017, B.P. offered Marley a ride from the St. Louis area to Kansas City and permitted him to stay the night at her residence. The following day, B.P. allowed Marley use of her vehicle and her daughter's cell phone. While using the cell phone, Marley saw a photo of B.P. with A.M.'s father causing Marley to question A.M. about B.P.'s relationship with A.M.'s father. A.M. deflected the inquiry and suggested she and Marley pick B.P. up from work, which they did. Upon returning home, Marley aggressively questioned B.P. about her relationship with A.M.'s father and accused her of cheating on him.

As the argument escalated, B.P. and her daughter went outside. A.M. got into B.P.'s car. As B.P. walked around the rear of the vehicle, Marley began choking her until she passed out.

A.M. exited the vehicle and shook B.P. in an effort to wake her up. Upon regaining consciousness, B.P. and A.M. flagged down a passing vehicle. The driver of the vehicle called 911 and handed the phone to B.P. After completing the call, B.P. returned the phone to the driver and began to move towards her property. B.P. fell, and Marley dragged her to the side of her house where he began choking her again. Marley fled the scene when a neighbor emerged nearby.

B.P. and A.M. drove to the nearby home of A.M.'s father before returning to meet responding law enforcement officers. B.P. experienced a sore throat, headache, and dizziness from the attack but declined medical treatment.

Marley was later arrested and charged, as a prior and persistent offender, with the class D felony of domestic assault in the second degree. Following a jury trial, Marley was found guilty and sentenced to a term of six and a half years in the department of corrections. Marley appeals his conviction. Additional facts are provided throughout this opinion.

**Discussion**

Marley raises four points on appeal. In his first point, he alleges that there was insufficient evidence that B.P. suffered a physical injury to support his conviction. Both Points II and III assert the trial court committed plain error relating to the verdict directing instruction. In Point II, Marley complains that the verdict director omitted an element and, in Point III, that the verdict director failed to follow the applicable approved jury instruction. In his fourth point, Marley alleges that the trial court abused its discretion in overruling his motion for mistrial after B.P. stated during her trial testimony that she knew Marley had "just got out," arguing this was a clear reference to Marley having been in prison. We affirm.

### Point I – Sufficiency of the Evidence

In Point I, Marley argues that the State failed to present evidence that he caused physical injury to B.P. sufficient to support his conviction for domestic assault in the second degree.

*Standard of Review*

"'When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt.'" *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018) (quoting *State v. Wright*, 382 S.W.3d 902, 903 (Mo. banc 2012)). We view the evidence and all reasonable inferences in the light most favorable to the jury's verdict, and we disregard all evidence and inferences to the contrary. *Id*. "'This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *Wright*, 382 S.W.3d at 903).

3

*Analysis*

"A person commits the offense of domestic assault in the second degree if" he "[k]knowingly causes physical injury to [a] domestic victim by any means, including but not limited to, . . . choking or strangulation[.]" § 565.073.1(1), RSMo. "Physical injury" is defined as the "slight impairment of any function of the body or temporary loss of use of any part of the body[.]" § 556.061(36), RSMo. The statute "'does not require that physical injury be substantial, merely that it be present.'" *State v. Rodgers*, 557 S.W.3d 494, 498 (Mo. App. S.D. 2018) (quoting *State v. Barnes*, 980 S.W.2d 314, 319 (Mo. App. W.D. 1998)). Marley complains that the State's evidence was insufficient to support a finding that B.P. sustained a physical injury. We disagree and find that the evidence in the light most favorable to the jury's verdict established that B.P. lost consciousness from being choked by Marley during the attack and that such evidence constituted a physical injury as that term is defined under the statute.

No courts have yet interpreted the language in the current definition of "physical injury." Thus, Marley focuses his argument on distinguishing cases that found sufficient evidence for physical injury before the statutory definition changed in 2017, arguing that the current definition is more restrictive and no longer includes physical pain.[2] This argument is not persuasive. Indeed, as it relates to the facts of this case, we discern no relevant difference between the current and previous definition of "physical injury." Both definitions encompass an "impairment" sustained by a victim and, while each definition uses slightly different phraseology, in this regard, it is beyond reasonable debate that restricting an individual's ability to breathe causing unconsciousness satisfies both definitions. As such, cases finding a physical injury under the previous statute with facts similar to those present in this case remain relevant to our analysis.

---

[2] The previous definition of "physical injury" required "physical pain, illness, or any impairment of physical condition[.]" § 556.061(20), RSMo (2016).

4

For example, in *Barnes*, this Court found there was sufficient evidence that an "impairment of her physical condition" was sustained by the victim when she was choked by the defendant to the point that she "almost fainted" and could not breathe. 980 S.W.2d at 319. Similarly, in *Rodgers*, the Southern District, relying on *Barnes*, found a defendant caused physical injury to the victim when he "grabbed a pillow[ ] and forced it down over her face, fully covering [the v]ictim's mouth and nose." 557 S.W.3d at 497. Under both *Barnes* and *Rodgers*, a defendant's conduct that inhibited a victim's ability to breathe was found to be an "impairment of physical condition" sufficient to constitute a "physical injury" under the previous definition. We similarly conclude that the act of breathing is a "function of the body" under the current definition and that an individual who has had her ability to breathe restricted through the act of choking at the hand of another has suffered, at a minimum, a "slight impairment of a[ ] function of the body" to satisfy the present definition of "physical injury."

The evidence presented at trial established that Marley strangled B.P., impairing her ability to breathe and causing her to become unconscious. This evidence was sufficient for a reasonable juror to conclude that B.P. suffered a physical injury as that term is defined in section 556.061(36), RSMo.

Point I denied.

### *Points II and III – Verdict-directing Instruction*

In his second and third points, Marley complains that the trial court plainly erred in submitting the verdict directing instruction to the jury. Specifically, in Point II, Marley alleges that the verdict director omitted an element and, in Point III, he argues that the verdict director deviated from the approved pattern instruction and, in so doing, did not require the jury to unanimously agree to its verdict.

The verdict director offered by the State and submitted to the jury stated:

INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 26, 2017, in the State of Missouri, the defendant knowingly caused physical injury to B.P. by strangling B.P., and

Second, that B.P. and defendant were persons who were or had been in a continuing social relationship of a romantic or intimate nature,

then you will find the defendant guilty of domestic assault in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "physical injury" means slight impairment of any function of the body or temporary loss of use of any part of the body.

At the instructions conference, Marley's counsel affirmatively stated "[n]o objection" to any of the instructions.[3]

*Standard of Review*

In both Points II and III, Marley alleges unpreserved instructional error. "An unpreserved claim of error can be reviewed only for plain error[.]" *State v. Davis*, 564 S.W.3d 649, 656 (Mo. App. W.D. 2018) (additional citation and quotation omitted). Plain error review requires a two-

---

[3] Rule 28.03 requires counsel to make "specific objections to instructions or verdict forms considered erroneous." It further states that "[n]o party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." *Id*.

Marley requests plain error review under Rule 30.20. The State argues that Marley has waived his claim of instructional error because of his counsel's affirmative statement that Marley had no objection. "Although [Marley] waived appellate review when his trial counsel affirmatively stated that [she] had no objection to [the verdict director], unpreserved claims of plain error relating to jury instructions may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." *State v. Berry*, 506 S.W.3d 357, 361-62 (Mo. App. W.D. 2016) (footnote omitted).

Under Rule 30.20, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

Rule references are to the Missouri Supreme Court Rules (2019).

step inquiry. *State v. Adams*, 571 S.W.3d 140, 144 (Mo. App. W.D. 2018) (additional citations omitted). "First, we must determine whether the claimed error is 'plain error affecting substantial rights.'" *Id*. (quoting *State v. Escobar*, 523 S.W.3d 545, 548 (Mo. App. W.D. 2017)). "'Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected.'" *Id*. at 144-45 (quoting *Escobar*, 523 S.W.3d at 548). Plain error is error that is "'evident, obvious, and clear.'" *Id*. at 145 (quoting *Escobar*, 523 S.W.3d at 548).

"'Second, if plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice.'" *Id*. (quoting *Escobar*, 523 S.W.3d at 548). "'The defendant bears the burden to prove that instructional error has produced manifest injustice.'" *Id*. (quoting *Escobar*, 523 S.W.3d at 548). "'For instructional error to constitute plain error, the defendant must demonstrate that the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict.'" *Id*. (quoting *State v. Celis-Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011)).

### *Point II*

In Point II, Marley claims that the trial court plainly erred in submitting Instruction No. 6 to the jury because it omitted an element required by the model instruction in the Missouri Approved Instructions ("MAI"). Although Instruction No. 6 did omit an element required by the MAI, Marley has failed to prove this omission resulted in manifest injustice.

MAI-CR 4th 419.74, the pattern approved jury instruction for second degree domestic assault, in relevant part, states:

(If) you find and believe from the evidence beyond a reasonable doubt:

First, that (on) (on or about) [*date*], in the State of Missouri, the defendant

7

[1] knowingly caused physical injury to [*Identify victim.*] by . . . ([*Describe other conduct such as "choking."*]) [*Identify victim.*],

and

Second, that [*Identify victim.*] and defendant were persons who

[c] (were) (and) (had been) in a continuing social relationship of a romantic or intimate nature, . . .

and

Third, that defendant (knew) (or) (was aware) that [*Repeat the relationship submitted in paragraph Second.*],

then you will find the defendant guilty of domestic assault in the second degree (under this instruction).

Marley complains that Instruction No. 6 omitted paragraph Third.

"'A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essential elements of [the] offense charged.'" *State v. Berry*, 506 S.W.3d 357, 362 (Mo. App. W.D. 2016) (quoting *State v. Zetina-Torres*, 482 S.W.3d 801, 811 (Mo. banc 2016)). "'A violation of due process arises when an instruction relieves the State of its burden of proving each and every element of the crime and allows the State to obtain a conviction without the jury deliberating on and determining any contested elements of that crime.'" *Id*. (quoting *Zetina-Torres*, 482 S.W.3d at 811). "'Plain error exists when an instruction omits an essential element and the evidence establishing the omitted element was seriously disputed.'" *Id*. (quoting *Zetina-Torres*, 482 S.W.3d at 811).

In this case, the omitted element—that Marley knew or was aware that he and B.P. had been in a "continuing social relationship of a romantic or intimate nature"—was not seriously disputed by Marley. B.P. and Marley were married at the time of the incident. B.P. testified that the relationship had been "a normal one as husband and wife, romantic and intimate[.]" Moreover,

8

Marley's subjective knowledge or awareness of his relationship with B.P. was revealed by the evidence that Marley accused B.P. of cheating on him and that the attack underlying the criminal charge lodged against him was precipitated by Marley's jealousy over B.P.'s relationship with her daughter's father. A review of the trial record reveals that the nature of the relationship between Marley and B.P. or Marley's knowledge or awareness of that relationship was not contested at trial, and thus we find that the omission of the element relating to Marley's subjective knowledge of the relationship did not result in manifest injustice.

Point II denied.

*Point III*

In Point III, Marley again alleges instructional error, arguing that the verdict director "did not follow the pattern jury instruction (MAI-CR4th 419.74) and permitted the jury to find [him] guilty without each juror finding the same facts to establish that the complaining witness was a 'domestic victim[.]'" The verdict director required the jury find, in relevant part, that B.P. and Marley "were or had been in a continuing social relationship of a romantic or intimate nature[.]" The applicable MAI provides the following approved language for this element: "(were) (and) (had been) in a continuing social relationship of a romantic or intimate nature[.]" Marley claims that it was error to submit "were or had been" in the disjunctive and that this error deprived him of a unanimous verdict resulting in manifest injustice.[4] We disagree.

As stated above, domestic assault in the second degree occurs when the defendant "[k]nowingly causes physical injury to [a] domestic victim by any means, including but not limited

---

[4] Marley cites to *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), to support his argument that the verdict director did not require a unanimous verdict. *Celis-Garcia* does not apply. That case specifically addressed "multiple acts" cases "when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56. Here, Marley was charged with a single act of domestic assault in the second degree against B.P.

to, . . . choking or strangulation[.]" § 565.073.1(1), RSMo. A "domestic victim" is defined as "a household or family member as the term 'family' or 'household member' is defined in section 455.010[.]" § 565.002(6), RSMo. Section 455.010(7) defines "family" or "household member" as:

> spouses, former spouses, any person related by blood or marriage, persons who are presently residing together or have resided together in the past, any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim, and anyone who has a child in common regardless of whether they have been married or have resided together at any time[.]

The approved instruction for domestic assault in the second degree, MAI-CR 4th 419.74, provides the following options for establishing the necessary relationship between the defendant and the victim:

> [2] [*Identify victim.*] and defendant were persons who
>
> [*Insert one of the following. Omit brackets and letter.*]
>
> [a] were related by blood or marriage,
>
> [b] (resided together) (and) (had resided together in the past),
>
> [c] (were) (and) (had been) in a continuing social relationship of a romantic or intimate nature,
>
> [d] have a child in common[.]

In this case, the State chose to instruct under option [c], but included "or" instead of "and" between "were" and "had been."

"Rule 28.02(c) mandates the exclusive use of an MAI-CR instruction whenever there is one applicable under the law and Notes on Use." *State v. Henderson*, 551 S.W.3d 593, 600 (Mo. App. W.D. 2018) (citing *State v. Clay*, 533 S.W.3d 710, 715-16 (Mo. banc 2017)). "The failure to give an instruction in accordance with MAI-CR or any applicable Notes on Use is error, the prejudicial effect of which must be judicially determined." *Id*. (citing Rule 28.02(f); *State v. Cooper*, 215 S.W.3d 123, 125 (Mo. banc 2007)). Here, it was error for the trial court to submit an

10

instruction that did not accurately track the MAI-CR. We must therefore determine whether this error resulted in manifest injustice.

Under these facts, we do not find manifest injustice. In order to establish Marley's guilt, the State was required to prove that B.P. was a "domestic victim." Instruction No. 6 did not relieve the State of that burden. *See Henderson*, 551 S.W.3d at 600 ("The due process rights of the defendant are violated when an instruction relieves the State of its burden to prove the existence of every essential element of the crime and does not require the jury to deliberate on and determine a contested element of the crime.") (quoting *State v. Stover*, 388 S.W.3d at 154 (Mo. banc 2012)). As explained above, in order to prove that B.P. was a domestic victim, the State had to show one of the following relationships:

> spouses, former spouses, any person related by blood or marriage, persons who are presently residing together or have resided together in the past, **any person who is or has been in a continuing social relationship of a romantic or intimate nature with the victim**, and anyone who has a child in common regardless of whether they have been married or have resided together at any time[.]

§ 455.010(7), RSMo (emphasis added). Under the relevant language of the statute, the State could establish that B.P. was a "domestic victim" by showing that B.P. and Marley were in a "continuing social relationship of a romantic or intimate nature" at the time of the assault *or* had been in such a relationship at some point prior to the events giving rise to the charge in this case. In recognition of this use of the disjunctive in section 455.010(7), MAI-CR 4th 419.74 permits the jury to be instructed either way (through use of the optional "were" if the relationship existed at the time of the offense or "had been" if the relationship had previously existed but had terminated prior to the date of the offense). The instruction can also encompass both time frames but, under that circumstance, the approved instruction requires use of the conjunctive "and" and would state that

11

the defendant and victim "were and had been in a continuing social relationship of a romantic or intimate nature[.]"

Marley seizes on the use of the disjunctive "or' in Instruction No. 6 and speculates that "there may have been a question about the status of the relationship between Mr. Marley and B.P. and whether it fell within a domestic relationship under either of the two bases provided[.]" However, Marley's argument misses the mark. In order to prevail, it is Marley's burden to establish that the instructional error resulted in manifest injustice. Importantly, Marley has never argued that B.P. was not a "domestic victim." At best, Marley argues the existence of a dispute as to whether he and B.P. were in "continuing social relationship of a romantic or intimate nature" at the time the offense was alleged to have been committed or whether it had terminated prior to that time. However, he does not argue (and has never argued) that such a relationship never existed—and under section 455.010(7), either scenario would render B.P. a "domestic victim."[5]

Under these circumstances, we find the use of the disjunctive in the verdict director was error, however this error did not result in manifest injustice, and thus did not constitute plain error.

Point III denied.

### Point IV – Motion for Mistrial

In Point IV, Marley alleges that the trial court abused its discretion by failing to grant a mistrial after B.P. stated during her testimony that Marley had "just got out," arguing that "the comment implied that [Marley] had just been released from prison or jail, which would have inflamed the passions of the jury against him and prejudiced him in the eyes of the jury."

---

[5] We also note that Marley filed a motion *in limine* seeking to prohibit the State from introducing additional evidence about his and B.P.'s relationship because much of the relationship occurred while Marley was in prison for another offense. This motion was granted by the trial court. "[I]t is well understood that parties should not charge error they invited, or complain that a court did what they asked[.]" *State v. Salmon*, 563 S.W.3d 725, 737 (Mo. App. E.D. 2018) (citation omitted).

Before trial, Marley filed a motion *in limine* seeking to exclude references to his prior arrests, convictions, and incarcerations. This motion was granted, and the State made redactions where necessary and refrained from putting on evidence related to these topics. The trial court also granted the State permission to lead B.P. through some transitions in her testimony "[b]ecause she has some difficulty talking about their relationship without mentioning prison[.]"

At trial, B.P. testified that at the beginning of the assault, Marley wanted B.P. to call the police:

> Q. [by the State:] . . . So initially he encouraged you to call 9-1-1?
>
> A. [by B.P.:] Yes.
>
> Q. Okay.
>
> A. And I said, No, I don't want to call the police. Because I didn't want it to go that far. I knew he had just got out. I just wanted him to leave. I was willing to drop him off wherever he wanted to go. The stuff that I had bought – let me see. I bought him some stuff and I told him he was willing – I was willing to –

Defense counsel objected, seeking a mistrial, which was denied by the trial court:

> [Defense counsel:] I mean, Judge, we're going to ask for a mistrial. It seems like – I believe we heard that she said that "he had just got out." "I knew he had just got out."
>
> THE COURT: I don't remember her saying he just got out. However, I don't think that is necessarily suggestive of the fact that – of where he just got out. I said going in that this whole prison thing is part of the res gestae of this case, and it's going to be very difficult to keep it out altogether.
>
> I think the prosecutor and Court have gone extremely out of their way to sanitize this case, probably more than it should have. So I don't think that slip by itself is unfairly prejudicial, and I'm going to deny the motion for mistrial.
>
> [Defense counsel:] Okay.
>
> THE COURT: Do you want me to instruct the jury to disregard anything? Frankly, I think it would make it worse, but if you want me to instruct the jury to disregard –

[Defense counsel:] No.

THE COURT: – anything, I'm happy to do so, but I don't think a mistrial's warranted under the circumstances.

[Defense counsel:] Okay, Your Honor.

*Standard of Review*

"A mistrial is an extraordinary remedy, reserved for when necessary to avoid a prejudicial effect and maintain an impartial jury." *State v. Russell*, 533 S.W.3d 807, 813 (Mo. App. E.D. 2017) (citing *State v. Goff*, 129 S.W.3d 857, 866 (Mo. banc 2004)). "'A trial court's decision to deny a motion for mistrial will only be overturned upon a finding that the trial court abused its discretion.'" *State v. Roberts*, 591 S.W.3d 898, 902 (Mo. App. W.D. 2019) (quoting *State v. Staten*, 524 S.W.3d 186, 190 (Mo. App. W.D. 2017)). Abuse of discretion occurs when the trial court's ruling "is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id*. (citations omitted). "On direct appeal, we review the trial court's decision 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Meyers*, 333 S.W.3d 39, 43-44 (Mo. App. W.D. 2010) (quoting *State v. Moyers*, 266 S.W.3d 272, 278 (Mo. App. W.D. 2008)) (additional quotation and citation omitted).

*Analysis*

Marley claims that the trial court abused its discretion in refusing to grant a mistrial, arguing that B.P.'s statement that Marley had "just got out" tainted the jury and "caused the jury to convict based on perceived propensities toward criminal conduct rather than on the basis of substantial and competent evidence presented at the trial." We disagree and find that this single, vague and isolated reference by B.P. did not constitute evidence of other crimes and, even if we were to find otherwise, Marley suffered no prejudice from the comment.

14

"[E]vidence that a defendant has committed, been accused of, been convicted of or definitely associated with another crime or crimes violates the rule that a criminal defendant has the right to be tried only for the offense with which he is charged." *State v. Berry*, 916 S.W.2d 389, 393 (Mo. App. S.D. 1996) (citing *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989)). "Vague references are not clear evidence associating a defendant with other crimes." *State v. Harris*, 156 S.W.3d 817, 824 (Mo. App. W.D. 2005) (citing *State v. Carr*, 50 S.W.3d 848, 854 (Mo. App. W.D. 2001)).

B.P.'s comment that Marley "just got out" in the middle of her explanation about why she did not wish to call police was too vague to connect Marley to other crimes. As the trial court noted, "I don't think that is necessarily suggestive of the fact that – of where he just got out." *See State v. Williams*, 411 S.W.3d 315, 319 (Mo. App. E.D. 2013) (finding that a prospective juror's comment during *voir dire* that the defendant had been "in our facility" was too vague to require a mistrial); *State v. McFadden*, 369 S.W.3d 727, 741 (Mo. banc 2012) (finding that testimony from witnesses that they had seen the defendant's photograph in the police station did not link him to other crimes).

Further, even if B.P.'s comment could be characterized as a reference to other crimes, Marley has not shown that he suffered prejudice. In analyzing the prejudicial effect of such reference, Missouri courts examine the following factors:

> 1) whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and 5) whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt.

*Meyers*, 333 S.W.3d at 44 (quoting *State v. Ward*, 242 S.W.3d 698, 704-05 (Mo. banc 2008)). None of the five factors weighs in favor of finding prejudice.

First, B.P.'s comment was voluntary and was not prompted by the State's question, "[s]o initially he encouraged you to call 9-1-1?" Next, B.P.'s comment "was singular, isolated, vague, indefinite, and was not magnified by the State." *Russell*, 533 S.W.3d at 815. Further, the trial court offered to instruct the jury to disregard the comment, but this offer was declined by defense counsel. *See Meyers*, 333 S.W.3d at 45 ("'The fact that a defendant limits his request for relief to that of a mistrial rather than making a request for a less drastic corrective action cannot aid him.'" (quoting *State v. Porter*, 241 S.W.3d 385, 399-400 (Mo. App. W.D. 2007))). Finally, the evidence against Marley was strong as both B.P. and A.M. testified that Marley strangled B.P. until she was rendered unconscious. Thus, we conclude the trial court did not abuse its discretion when it denied Marley's request for a mistrial.

Point IV denied.

## Conclusion

Marley's conviction is affirmed.

_____

EDWARD R. ARDINI, JR., JUDGE

All concur.

16