

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE INTEREST OF Z.G., )
)
            Appellant, )
v. )       WD86400
)
JUVENILE OFFICER, )       Opinion filed:  November 19, 2024
)
            Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF
JACKSON COUNTY, MISSOURI
THE HONORABLE JALILAH OTTO, JUDGE**

Division Two:  Alok Ahuja, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

Z.G. ("Juvenile") appeals from the circuit court's judgment adopting the Jackson County Family Court commissioner's findings and recommendations that Juvenile committed what would have been, if he were an adult, two counts of the felony of statutory sodomy in the first degree, in violation of section 566.062.[1] Juvenile was placed on probation in the custody of his father ("Father") with a suspended commitment to the custody of the Director for Family Court Services for residential placement.  In his sole Point on Appeal, Juvenile claims "there was insufficient evidence from which the juvenile division could find beyond a

---

[1] All statutory references are to RSMo (2017).

reasonable doubt that [Juvenile] acted for the purpose of arousing or gratifying his sexual desire."  We affirm.

## Factual and Procedural History

On February 15, 2023, the Juvenile Officer of Jackson County, Missouri (the "Juvenile Officer") filed a petition against Juvenile which asserted two counts of statutory sodomy in the first degree for acts occurring between January 17, 2020 and July 4, 2022.  An amended petition was subsequently filed which asserted the same, two counts, to wit:

COUNT 1

Between January 17, 2020, and July 4, 2022, in Jackson County, Missouri, the juvenile, by the juvenile's own conduct or by the conduct of another person for which the juvenile would be criminally responsible if tried as an adult, *for the purpose of arousing or gratifying the sexual desire of [Juvenile]*, had deviate sexual intercourse with another person, [Victim], who was less than twelve years old,[2] by inserting his penis in to [Victim's] anus, in violation of Section 566.062 RSMo.  (Statutory Sodomy in the First Degree – Felony)

COUNT 2

Between January 17, 2020, and July 4, 2022, in Jackson County, Missouri, the juvenile by the juvenile's own conduct or by the conduct of another person for which the juvenile would be criminally responsible if tried as an adult, *for the purpose of arousing or gratifying the sexual desire of [Juvenile]*, had deviate sexual intercourse with another person, [Victim] who was less than twelve years old,[3] by inserting his fingers in to [Victim's]

---

[2] Section 566.062.1 provides that "[a] person commits the offense of statutory sodomy in the first degree if he or she has deviate sexual intercourse with another person who is less than *fourteen years of age*." (emphasis added).  As can be seen, the Juvenile Officer alleged Juvenile "had deviate sexual intercourse with . . . [Victim], who was less than *twelve years old*, . . . in violation of Section 566.062." (emphasis added).  Regardless, it had no effect on the action as Victim was just five, six, or seven years old. *See T.R.T. v. Juv. Officer*, 641 S.W.3d 263, 266 n.3 (Mo. App. W.D. 2021).

[3] *See supra* note 2.

anus, in violation of Section 566.062 RSMo. (Statutory Sodomy in the First Degree – Felony)

(Emphasis added). Between the dates of January 17, 2020 and July 4, 2022, Juvenile was ten, eleven, and twelve years old, and Victim was five, six, and seven years old.

An adjudication hearing was conducted and the following evidence, viewed in the light most favorable to the judgment, was presented:

Victim and Juvenile are cousins. When Victim was approximately four years old, he started visiting Father's home, where he would play with Juvenile and Juvenile's brother and stay overnight. Victim's visits were more frequent than just holidays, but they did not occur every month.

At times when Victim went to Father's home, he and Juvenile would do something other than play. Victim testified Juvenile was "touching me and stuff" with his penis. Victim specified that Juvenile "keep sticking it in like my butt and then I didn't like it. I told him to stop and then he was keep doing it." Victim testified this happened "[m]ore than one time[,]" the first time occurring when he was five and the last time when he was seven. The last time Victim visited Father's house, prior to his disclosure, was on July 4, 2022.

In August of 2022, when he was seven years old, Victim disclosed the abuse to his mother. The disclosure occurred when Victim's mother "went to go check on him" in their living room and "he jumped up" from the couch. She asked Victim what he was doing and he told her "nothing." After she continued to repeat the same question and had received the same answer from Victim, she asked to see his

3

hands. She "smelt his hands, and it smelled like he was doing stuff with hisself [sic]." She testified "[i]t smelled like poop." Victim told his mother he was touching "[t]he inside part" of his buttocks. When she asked why he was doing that, Victim started crying and he eventually told her "[Juvenile] had been touching him since he was five."

Victim's mother had noticed changes in Victim's behavior starting when was five years old. Victim "had nightmares and he peed in the bed all the time and he had anger problems. Like he walked around angry for no reason." Victim would also "isolate hisself [sic]. He would like to be by hisself [sic] all the time." Victim's mother testified that to her knowledge, Victim has never taken back his allegations about what Juvenile did to him, nor has he stated anyone else touched him in a sexual manner.

Following the disclosure, Victim's mother called Juvenile's Father. Victim's mother then took Victim to the hospital at the suggestion of Father, where he met them. There, in a recorded conversation, Father began questioning Victim about his allegations against Juvenile. Throughout, Victim consistently told Father it was Juvenile who was touching him. Victim stated he did not tell anyone about what happened because he did not want to get in trouble. He also stated it did not occur at his "momma's house," but rather in Juvenile's room.

Victim confirmed "it happened twenty times." He also confirmed that Juvenile stuck his penis "[a]ll the way in" Victim. Victim further confirmed, multiple times, that Juvenile asked Victim "to do it to him" or to touch him but

4

Victim denied ever reciprocating. Victim stated, "He say, you need to touch me" and Victim would say no. In response to Father's additional questions of what he said to Juvenile when Juvenile asked Victim to "stick it in him," Victim answered, "I told him to stop. I told him to stop." Father's recordings of the conversation were handed over to law enforcement and later admitted into evidence, over objection, at the adjudication hearing.

On September 7, 2022, Victim participated in a forensic interview. A copy of this recorded interview was admitted into evidence at the adjudication hearing. Soon after the interview began, Victim volunteered that his "cousin be touching me and stuff." He identified his cousin as Juvenile, and when asked to talk about the touching, he explained that he would try to lay down and go to sleep, but Juvenile would come over and lay on top of Victim. Victim stated Juvenile was "like humping me and stuff" and Victim told him to get off. Victim stated this happened at Father's house, and that Juvenile did this "[m]ore than one time." Victim further explained that Juvenile laid on Victim's butt, as Victim was laying on his stomach, and that both he and Juvenile were clothed.

When asked if there was ever a time the skin of Juvenile's body touched his, Victim stated Juvenile touched Victim's butt with his hand underneath Victim's clothing. When asked if any other parts of Juvenile's body went under his clothing, Victim stated Juvenile's "thing" "went in my butt." He explained it felt weird and he told Juvenile to get off of him. Victim shook his head no when asked if Juvenile said something when that happened. Using an anatomically-correct drawing,

5

Victim indicated that Juvenile's "thing" was his penis and he also identified the "butt." When asked what Juvenile did to make his "thing" go inside Victim's butt, Victim stated "he just put it in there," but he also nodded his head yes when asked if Juvenile "pull[ed] [Victim's] pants down or anything like that." He explained he was laying down, and when he looked behind him, he saw Juvenile humping him.

Victim stated that Juvenile "said like don't tell anybody, don't tell anybody" and also told Victim to do to Juvenile "the same thing he did to [Victim]," meaning insert his penis in Juvenile's anus. Victim said he told Juvenile "no" and further denied that there was ever a time his penis touched a part of Juvenile's body when Juvenile told him to do so. Victim explained this always happened in the room Juvenile shared with Victim's other "little cousin[]" and occurred "sometimes in the day, sometimes at night." He further indicated this did not occur every time he visited, but only "sometimes."

Victim also disclosed that Juvenile "put his finger in my butt . . . ." He explained he was watching TV when Juvenile "just, like, put it in my butt." Victim told Juvenile to get his "finger out of my butthole." He further stated Juvenile putting his finger in Victim's butt was something he did "sometimes" as opposed to every time Juvenile would insert his penis.

Victim also discussed an incident he remembered when he was six. He explained Juvenile was touching him when he was trying to lay down and sleep. He told Juvenile to "get off of me, like he still do stuff." Victim stated Juvenile said nothing when Victim kept telling him to stop and get off.

Victim stated no one other than Juvenile has ever done something he did not want them to do or made him feel scared or worried. He stated he kept what was happening a secret until his mother caught him "digging in [his] butt." Victim stated he touched himself because "[Juvenile] was still in my head." Victim further stated he never saw Juvenile do something to his own body or put something on his penis, nor was there ever a time that something came out of Juvenile's penis or that Juvenile did something to his penis in order to put it in Victim's butt.

On September 8, 2022, Victim was examined by a child abuse pediatrics fellow physician ("Physician"). Physician testified that her physical examination of Victim was normal and that she found no signs of trauma, which is expected considering the tissue in the anal-genital region "heals really fast." Physician also testified generally that it is physically possible for a male child as young as ten years old to have penetrated five-year-old Victim with his penis. She similarly testified it is "possible for a ten-year-old male child, developmentally, to have an erect penis such that it could be penetrated into a five-year-old male's anus," as "erections are a natural physiologic reflex." Physician further testified that the touching of the penis, such that it becomes erect, could be pleasurable even to a pre-pubertal child. She explained, "They get the dopamine release in their brain, and so then *they want to continue to do what felt good*." (emphasis added).

At the close of the Juvenile Officer's evidence, Juvenile moved for a judgment of acquittal, arguing in part a lack of "any evidence whatsoever through which this Court could drawn an inference that [Juvenile] has acted with the

7

purpose to gratify his sex – sexuality." After taking the motion under advisement and continuing the adjudication hearing to another date, the commissioner overruled the motion.

Juvenile thereafter testified in his own defense. He testified Victim has come over to his house before, where he plays with Juvenile's younger brother and sometimes with Juvenile. He explained they would play with toys and video games, and would also wrestle. Juvenile testified their clothes were on when they wrestled, but he may have accidentally grabbed Victim by the butt when doing so. He testified there was never a time he and Victim were together where their clothes were off. He further testified his brother was always with him and Victim, and that Victim liked to play more with Juvenile's brother because "he's more of his type. Like he – he plays the games like he do a lot." He testified that when Victim stayed the night, there were times they would all sleep together in his bed and other times when Victim would sleep in his brother's bed. Juvenile did not know why Victim was saying he did these things to Victim.

Following his testimony, Juvenile moved for judgment of acquittal at the close of all evidence. After hearing closing arguments and going off the record to confer with counsel, the commissioner found "the evidence adduced proves the allegations of Count I and II by evidence beyond a reasonable doubt." The commissioner thus found "[t]he Court has jurisdiction over the Juvenile, and the Juvenile is in need of care and treatment under Chapter 2 of the Revised Statutes of Missouri." In so finding, the commissioner expressly found Victim's out-of-

court statements "were very credible," stating further, "Taking all of those statements together, considering the time, place and circumstances of the statements, considering the totality of the circumstances in the case, I do find the statements are reliable." This was also reflected in the commissioner's "Order Upon Adjudication Hearing" entered on June 6, 2023, to wit:

> The victim . . . testified at the hearing. At that time, it was apparent that, as he stated, that he was nervous and scared. His out-of-court statements were very credible. Taking all of the statements together and considering the time, place and circumstances of the statements and considering the totality of the circumstances of the case, the court finds that his out-of-court statements are reliable. The court believes any inconsistency between . . . his in-court statements and his out-of-court statements appeared to be the result of the child being subjected to the pressure of testifying regarding intimate matters in a courtroom setting. The court finds there was no substantial motive of the child to fabricate the statements. The child seem [sic] to be highly intelligent and well able to describe what happened to him. The forensic interview of the child was conducted by means recognized as proper by those in that field. The case is actually an excellent example of why it is important to provide a legal means for children to provide statements outside the unnatural and intimidating environment of a courtroom setting.

The disposition hearing was held on June 20, 2023. No further evidence was presented. The Deputy Juvenile Officer recommended Juvenile be placed in the custody of the Director of Family Court Services for residential placement, but said commitment could be suspended and Juvenile placed in the custody of Father on probation. The commissioner followed the recommendations, as reflected in its "Findings and Recommendations" filed June 22, 2023. The circuit court adopted and confirmed said "Findings and Recommendations" as a final judgment

9

of the court on June 23, 2023, and entered the judgment on June 26, 2023.[4] That same day, Juvenile filed a "Motion for Circuit Court Judgment of Acquittal, or in the Alternative, for Circuit Court Rehearing." Before the circuit court could rule on his motion, Juvenile filed his Notice of Appeal. The next day, the circuit court entered its order denying Juvenile's motion.

Juvenile's premature Notice of Appeal is deemed timely filed;[5] the appeal is now before us.

**Standard of Review**

"We review juvenile proceedings 'in the same manner as other court-tried cases.'" *C.B.K. v. Juv. Officer*, 679 S.W.3d 128, 131 (Mo. App. E.D. 2023) (quoting *D.C.M. v. Pemiscot Cnty. Juv. Off.*, 578 S.W.3d 776, 786 (Mo. banc 2019)). Accordingly, "we will affirm a judgment in a juvenile proceeding unless it is not supported by evidence, is against the weight of evidence or erroneously declares or applies the law." *Id.* (citing *D.C.M.*, 578 S.W.3d at 786). "The credibility of the witnesses and the weight their testimony should be given is a matter to be determined at the hearing by the circuit court, which can believe 'none, part, or all of their testimony.'" *Id.* (quoting *D.C.M.*, 578 S.W.3d at 786).

"We review a sufficiency-of-the-evidence challenge on the merits, not as plain error, regardless of whether the sufficiency claim was preserved in the circuit court or adequately briefed on appeal." *Interest of J.M.W.*, 676 S.W.3d 81, 87 (Mo.

---

[4] This information was all contained within the commissioner's "Findings and Recommendations" filed on June 22, 2023.

[5] *See* Missouri Supreme Court Rule 81.05(b) (2023).

App. E.D. 2023) (citing *P.L.S. v. Juv. Officer*, 651 S.W.3d 885, 892 n.5 (Mo. App. W.D. 2022)). "For sufficiency of the evidence purposes, '[t]he evidence, including all reasonable inferences therefrom, is considered in the light most favorable to the judgment, disregarding all contrary inferences.'" *C.B.K.*, 679 S.W.3d at 131 (alteration in original) (quoting *D.C.M.*, 578 S.W.3d at 786). "'While we are to accept as true all inferences favorable to the State, they must be logical inferences that may be reasonably drawn from the evidence.'" *A.B. v. Juv. Officer*, 447 S.W.3d 799, 803 (Mo. App. W.D. 2014) (emphasis removed) (quoting *J.N.C.B. v. Juv. Officer*, 403 S.W.3d 120, 124 (Mo. App. W.D. 2013)).

"'When a juvenile is alleged to have committed an act that would be a criminal offense if committed by an adult, the standard of proof, like that in criminal trials, is beyond a reasonable doubt.'" *T.R.T. v. Juv. Officer*, 641 S.W.3d 263, 267 (Mo. App. W.D. 2021) (quoting *D.C.M.*, 578 S.W.3d at 786). Thus, the question before us is "'whether there is sufficient evidence from which the fact finder could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *I.D. v. Juv. Officer*, 611 S.W.3d 869, 873 (Mo. App. W.D. 2020)).

**Analysis**

In his single Point on Appeal, Juvenile claims "[t]he juvenile division of the circuit court clearly erred and abused its discretion" when it overruled his motion for judgment of acquittal at the close of all evidence and entered a judgment finding he committed two counts of what would be, were he an adult, the offense of statutory sodomy in the first degree. Juvenile contends "there was insufficient

11

evidence from which the juvenile division could find beyond a reasonable doubt that [he] acted for the purpose of arousing or gratifying his sexual desire."

"A person commits the offense of statutory sodomy in the first degree if he or she has deviate sexual intercourse with another person who is less than fourteen years of age." Section 566.062.1. "Deviate sexual intercourse" is defined as follows:

> [A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the penis, female genitalia, or the anus by a finger, instrument or object *done for the purpose of arousing or gratifying the sexual desire of any person* or for the purpose of terrorizing the victim[.]

Section 566.010(3) (emphasis added). "A person 'acts purposely,' or with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result." Section 562.016.2.

> Juvenile Officer has the burden of proving each and every element of a criminal offense beyond a reasonable doubt. *In the Interest of V.L.P.*, 947 S.W.2d 546, 547 (Mo. App. W.D. 1997). Here, intent to cause sexual arousal or gratification is a specific element of the crime charged. Section 566.010(1).[6] Thus, there must be some evidence from which the juvenile court could find beyond a reasonable doubt that Juvenile intended to do the act for the purposes of sexual arousal or gratification. Without such evidence, we must find that Juvenile Officer failed to meet its burden of proof on this element.

*In re J.A.H.*, 293 S.W.3d 116, 120 (Mo. App. E.D. 2009).

---

[6] Citing to definition of "deviate sexual intercourse" in previous version of section 566.010, which included the same language regarding the applicable *mens rea* as found in the definition of "deviate sexual intercourse" in the version of section 566.010(3) applicable here. *See In re J.A.H.*, 293 S.W.3d 116, 119 (Mo. App. E.D. 2009).

"'Because direct evidence of a defendant's intent is rarely available, the State most often proves intent through circumstantial evidence.'" *T.R.T.*, 641 S.W.3d at 270 (quoting *State v. Holmes*, 626 S.W.3d 339, 342 (Mo. App. E.D. 2021)). "'In assessing whether a defendant touched another for the purpose of arousing or gratifying the sexual desire of any person, a [trier of fact] may infer intent from the surrounding circumstances or from the sexual nature of the act itself.'" *Id.* (alteration in original) (internal quotations omitted) (quoting *Holmes*, 626 S.W.3d at 342). However, Missouri courts have held that with juvenile defendants, intent cannot be inferred from the act *alone*; rather, the inference of intent must be supported by evidence or the circumstances of the case. *See C.B.K.*, 679 S.W.3d at 131 ("While touching a person's vagina can reflect an adult defendant's purpose to arouse or gratify sexual desire, this same, singular act *cannot* be interpreted as achieving the same sexual purpose involving juvenile defendants." (emphasis added) (citations omitted)); *A.B.*, 447 S.W.3d at 805-06; *J.A.H.*, 293 S.W.3d at 122; *T.R.T.*, 641 S.W.3d at 271-72. In short, "[a]bsent direct evidence of intent, circumstantial evidence of intent is to be found in the specific circumstances of each case." *A.B.*, 447 S.W.3d at 804 (citation omitted).

In arguing there was insufficient evidence of his intent, Juvenile focuses solely on the *lack* of certain evidence. Specifically, he argues there was no direct evidence of physical arousal, such as an erection, or evidence from which physical arousal could be inferred. He also contends that the Juvenile Officer failed to present any circumstantial evidence that he acted for the purpose of sexual

gratification. We disagree. Not only does Juvenile disregard our standard of review in so arguing, but he also ignores evidence from which a fact finder could have found beyond a reasonable doubt that Juvenile inserted his penis and fingers into Victim's anus for the purpose of arousing or gratifying his sexual desire.

Significantly, evidence was adduced that Juvenile would lay on top of Victim and "hump" Victim just prior to the acts described, including when Juvenile pulled Victim's pants down to insert his penis inside Victim's anus. Victim specifically testified to this behavior by Juvenile prior to the episodes of sexual assault. Here, such actions are direct evidence of the presence of physical arousal in Juvenile and lead to a reasonable inference that the entirety of Juvenile's actions were for Juvenile's sexual arousal or gratification. *C.f. A.B.*, 447 S.W.3d at 804-05 (noting the absence of evidence of "up and down movement" or "rubbing" in finding there was no direct evidence of physical arousal or circumstantial evidence of juvenile's intent).

There was also evidence presented by Victim that Juvenile inserted his penis in Victim's anus and it went "all the way in," indicative of an erection rather than flaccidity of Juvenile's penis. Further, evidence was adduced that it is "possible for a ten-year-old male child, developmentally, to have an erect penis such that it could be penetrated into a five-year-old male's anus," as "erections are a natural physiologic reflex." Here, once again, the trial court was presented with evidence leading to a reasonable inference of the presence of Juvenile's physical arousal such that Juvenile was acting for his own sexual arousal or gratification.

14

Additionally, when Victim told Juvenile to stop his assault, Juvenile did not do so. Victim testified "[Juvenile] was – keep sticking [his penis] in like my butt and then I didn't like it. I told him to stop and then he was keep doing it." Here, despite Victim telling Juvenile "to stop," Juvenile refused Victim's request and kept "doing it." In the face of a direct request by Victim to cease the activity, Juvenile's continuation of the assault suggests Juvenile's actions were for his own sexual arousal or gratification. *C.f. J.A.H.*, 293 S.W.3d at 120 (noting the juvenile stopped when victim asked him to in finding the circumstances of the touching "fail to give rise to the slightest inference that Juvenile touched T.H.'s penis *for the purpose of sexual arousal or gratification*").

Finally, the evidence demonstrated Juvenile perpetrated said acts against Victim on multiple occasions in the same location. Victim consistently stated these acts always occurred at Juvenile's house in Juvenile's room. Further, the duration of each charged assault suggests Juvenile perpetrated these acts for the purpose of sexual arousal or gratification, and was not merely a brief, isolated act of sexual exploration by Juvenile. Victim testified Juvenile touched Victim's anus with his penis "[m]ore than one time" and similarly stated Juvenile would put his finger inside Victim's butt "sometimes." In fact, Victim told Father "it happened *twenty times*." (emphasis added). This evidence is significant when considered in light of Physician's testimony that children desire to continue doing that *which feels good*. And similarly, Juvenile asked Victim to do to him what he did to Victim, indicating that Juvenile derived pleasure from perpetrating these acts against Victim and

15

desired to feel that same pleasure in a different way. The trial court could thus reasonably infer from this repetitive and consistent behavior that when Juvenile inserted his penis and fingers into Victim's anus, he did so for the purpose of sexual arousal or gratification.

Accordingly, there was sufficient evidence from which a fact finder could have found beyond a reasonable doubt in both Counts I and II that Juvenile acted for the purpose of arousing or gratifying his sexual desire. The circuit court did not err.

Juvenile's Point is denied.

### Conclusion

For the foregoing reasons, the circuit court's judgment is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

16